UTICA,
October, 1820.

BEALS
v.
ALLEN.

Beals *against* Allen.

TRESPASS for seising, taking, and carrying away certain goods of the plaintiff, tried at the *Ontario* circuit, in 1819, before Mr. Justice *Platt.*

On the 3d of *October,* 1817, the plaintiff, who resided at *Canandaigua,* sent his clerk, *James Byrnes,* to *Pultneyville,* to obtain payment or security for a demand against *Tho mas Lowthrop,* for goods sold to him. *Byrnes* had a letter from *James Grieve,* the principal clerk of *Lowthrop,* at *Geneva, L.* being then absent, to *James Dey,* the acting clerk of *L.* at *Pultneyville,* which contained directions to *Dey* to deliver to *B.* the goods which *Lowthrop* had purchased of the plaintiff, if they were not sold, and if the whole or any part of them were sold, to make up the amount out of other goods, in the store of *L.* at *P.* The demand of the plaintiff amounted to 744 dollars and 12 cents, for goods sold to *L.* on a credit, 320 dollars of which was to be paid on the 15th of *October,* 311 dollars and 62 cents on the 6th of *Novem ber,* 1817, and the residue on the 6th of *January* following. *Dey,* to whom the letter was delivered, at first refused to deliver the goods, or to do any thing on the subject. But, after taking some advice, he delivered goods to *B.* to the amount of 784 dollars, the greater part of which consisted of goods previously sold by the plaintiff to *L.* and which remained unpacked ; and *Dey* agreed to come to *Canandai-*

A special agent has no authority to bind his principal, by any act, not within the scope of his authority.

*B* sold goods to *L.* on a credit, and before the term of credit expired, apprehending the insolvency of *L.* applied, on the 3d of *October,* 1817, for payment or security ; and *C.* a clerk of *L.,* employed in a store at *G.* to keep the books and accounts, and to sell goods by retail to customers, in the absence of *L* gave an order on *D.* another clerk of *L.* at *P.* to deliver goods to *L.* to the amount of his demand ; and *B.* accordingly received the amount, partly in the same goods which he had before sold to *L.* and partly in other goods. An execution on a judgment against *L.* in favour of *M.* was delivered to the sheriff on the 24th of *September,* 1817, and an execution on a judgment against *L.* in favour of *K.* on the 28th of *October,* and the sheriff seized the goods in the hands of *B.* and sold and applied them on the last execution.

In an action of trespass, &c. brought by *B.* against the sheriff, *held,* that *C* the clerk of *L.* had no authority to deliver the goods to *B.*, and although it did not appear that *L.* had ever disaffirmed the act of *C.* and a stranger could not object to his want of authority, yet the sheriff, acting in behalf of the judgment creditors, who were interested, was not to be considered in that light, and might insist that the property was not changed by the delivery of the goods to *B.* for want of authority in *C.*

The goods of the debtor are bound by the delivery of an execution against him, to the sheriff, whether they are actually levied upon or not, and a subsequent sale of them by the debtor is void.

When two several executions are delivered to a sheriff at different times at the suit of different plaintiffs, against the same defendant, and the sheriff takes and sells the goods of the defendant, and applies the proceeds in satisfaction of the last execution, leaving the other unsatisfied, though he is accountable to the plaintiff in the first execution, for having so sold and misapplied the property to the last execution ; yet a third creditor, who had got possession of the goods subsequent to the delivery of the first execution,but prior to the second, cannot avail himself of the act of the sheriff in selling under the last execution, instead of the first ; or call in question the regularity of the sale.

UTICA,
October 1820.

BEALS
v.
ALLEN.

*gua*, and receive the difference between that amount, and the plaintiff's demand. The goods, while in a wagon, on their way to the plaintiff at *C.* were seized by the deputy of the defendant, who was sheriff of the county of *Ontario*, at *Williamson*, by virtue of two executions of *Thomas Morris* against *Lowthrop* and one *William Lilly*.

The defendant justified the taking of the goods, as sheriff of *Ontario*, under two judgments in favour of *Thomas Morris*, one docketted the 2d *May*, 1814, against *Lowthrop & Lilly*, for 20,000 dollars debt, and 14 dollars 32 cents, costs, and the other docketted the 13th *July*, 1816, against the same defendants, for 18,000 dollars debt, and 13 dollars, 68 cents costs, and the executions issued on those judgments. The first execution was returnable the first day of *November*, 1817, and the defendant was directed to levy thereon, 1,817 dollars and 63 cents, with interest from the 27th *September*, 1817, and was received by him *Sept.* 27, 1817. The second execution was delivered to the defendant on the 24th *September*, 1817, on which the defendant was directed to levy 10,000 dollars debt, 16 dollars and 49 cents costs, with interest from the 13th *July*, 1816. The goods in question were taken, by virtue of these executions, at *W.* on their way from *P.* It appeared from the evidence of *Byrnes*, that he was sent to obtain the goods, in consequence of the plaintiff hearing that *L.* was in failing circumstances. The account of them was kept by *D.* on slips of paper, and no regular bill of sale of them was made out until after the seizure, when a bill was made, in the usual form, for goods sold and delivered to the plaintiff. The defendant also gave in evidence a judgment in favour of *John Dey* and *Elias Kane*, against *L.* for 32,000 dollars debt, and 14 dollars 43 cents costs, docketted 3d *August*, 1816, and an execution thereon, tested the 20th *October*, 1817, returnable in *January*, which was received by the defendant, the 28th *October*, 1817.

*W. Kibbe*, a witness for the plaintiff, testified that he attended the sale of the goods by the sheriff, as the agent of the plaintiff, on the 12th *November*, 1817, and forbade the sale; that the defendant stated that he had seized the goods on the two first executions, but they had been withdrawn, having been issued irregularly, or for some other reason; and

that he should sell the goods under the third execution.
That after the sale, the sheriff said that he had sold the goods
under the last execution.    The defendant produced written
instructions from the attorney of *Thomas Morris* to the she-
riff, dated *November* 6, 1817, that the first execution having
issued irregularly, he was to consider it as void, and dis-
charge the *lien* on the property of the defendant.    *Dey*
testified, that when he let *Byrnes* have the goods, it was
agreed that they should be kept by the plaintiff, unopen-
ed, until *Lowthrop* returned from *New-York*, where he had
gone, and if he approved of the transaction, the sale was to
be absolute, but not otherwise.    This was denied by the
witness *Byrnes*, who testified that the sale was absolute and
unconditional.    It was proved that *Grieve*, who gave the or-
der to *Dey*, to deliver the goods to *B.* the agent of the plain-
tiff, was a clerk employed temporarily by *L.*, to keep his
books and accounts, and to sell and retail goods to custom-
ers, and had no order to sell goods by the quantity, or to de-
liver goods or other effects, in payment or security for debts.
The sheriff sold real estate of *L.* under the second execution,
to the amount of 1500 dollars.    On the third execution, the
defendant levied 2,528 dollars and 58 cents.

The judge charged the jury, that as the sale of the goods
was made by *Lowthrop's* clerk, to secure a *bona fide* debt to
the plaintiff; and as it had been proved by the defendant's
own confession, that the sale of the goods was made under
the last execution, and the proceeds applied upon it, the
defendant had failed in his justification, and the plaintiff
was, therefore, entitled to recover.    The jury found a ver-
dict for the plaintiff, accordingly, for 784 dollars and 12
cents.

A motion was made to set aside the verdict, and for a new
trial.

*Henry*, for the defendant.

*Oakley*, (Attorney General,) contra.

SPENCER, Ch. J. delivered the opinion of the Court.

UTICA,
October, 1820.

BEALS
v.
ALLEN.

This case gives rise to three questions : 1. Whether the delivery of the goods to the plaintiff's agent was an authorized act, and changed the property ?

2. Whether the second execution in favour of *Morris* was a subsisting one ; and if so, then,

3. Whether the sale of the goods by the defendant, though the proceeds were applied toward satisfying an execution received subsequent to the sale and delivery of the goods to the plaintiff, was justifiable and legal ?

I am of opinion, that the law was laid down incorrectly to the jury. *Dey* was merely a temporary clerk, and acted entirely under the instructions given to him by *Grieve*. At first he refused, altogether, to act, but on receiving advice, conformed to those instructions. *Grieve* has stated the extent of his authority, as *Lowthrop's* agent. He was a clerk in his store at *Geneva*, to keep his accounts and books, and to sell and retail his goods to his customers. He had no authority to sell goods by the quantity, or to deliver goods in payment, or security for debts. The transaction between *Dey* and the plaintiff's agent, can never be considered an ordinary sale and delivery of goods. The plaintiff did not apply to *Grieve* as a purchaser of goods. He stated, that he had sold goods to *Lowthrop*, and that he was informed executions had been, or were about to be, put into the hands of the sheriff. He applied to get security for his debt, which he was willing to take in the goods he had sold, as far as they would go, and the balance in other goods. The position laid down by *Comyn*, (1 *Com. on Con.* 240.) is fully warranted by the cases : " There is a wide distinction," he says, " between a general, and a particular agent. A general agent, as a factor for a merchant residing abroad, binds his principal by his acts ; but an agent constituted for a particular purpose, and under a limited and circumscribed authority, cannot bind the principal by any act in which he exceeds his authority." (3 *Term Rep.* 757. 1 *Esp. N. P. Rep.* 111.) It is, indeed, an elementary principle, that no man can be bound by the act of another, in relation to his property, unless he has deputed him to act for him ; nor can he be bound then, if his agent acts beyond the scope of his authority. This is the genera

principle. There are exceptions to it, but these exceptions do not touch the present case. The only possible ground on which the transfer of the goods to the plaintiff, in satisfaction of a debt not then due, can be upheld, is that there is no evidence that *Lowthrop* disaffirmed the act. But, I cannot think, that his silence can alter the effect of the act. A stranger, it is true, could not take the objection; but the defendant is not to be viewed in that light. He acts for, and in behalf of the judgment creditors, and they have an interest in questioning the acts of *Lowthrop's* agents. If there was a defect of power in those agents to convey the goods to the plaintiff, the defendant, as representing the rights of the creditors, has a right to say, that there was no change of property.

It appears to me, that *Kibbe* must have been mistaken in saying, that the sheriff informed him, that both the first and second execution had been withdrawn. The first certainly was; but it was shown, that the second had not been withdrawn, and that, in *January*, 1818, *Lowthrop's* real property was sold under it. By this execution, the defendant was directed to levy 10,000 dollars debt, and 16 dollars and 45 cents costs, and interest from the 13th of *July*, 1816, and it was received by the sheriff on the 24th of *September*, 1817.

These goods, then, were clearly bound by the execution, so that a sale of them by *Lowthrop* himself would not have devested the sheriff's right to take them. The goods were bound by this execution from the time it was put into the defendant's hands,* which was prior to the sale and delivery to the plaintiff. It was not necessary that the goods should have been levied upon, to prevent the effect of the sale, or to authorize the sheriff to take them in the manner he did.

* Vide *Lambert* v. *Paulding. Ante*, p. 311.

The learned judge was, in my apprehension, incorrect, in considering the defendant as having failed in his justification, because the sale was under the last execution. The defendant had a right to sell under the second execution. In the case of *Sandford* v. *Roosa*, (12 *Johns. Rep.* 162.) it was decided, that if a sheriff sell under an execution last delivered, the sale is good; but the party who delivered the

prior execution has his remedy against the sheriff. In the present case, *Morris'* second execution has not been satisfied; and it is a question between him and the defendant, whether the latter incorrectly sold on the junior execution. The defendant having a right to take the goods where he did; having, also, a right to sell them on the second execution, it totally negatives the plaintiff's right to call his acts in question, for selling and applying the moneys on the junior execution. How the sale took place, and how the money was applied, were matters with which the plaintiff had no concern. It is enough for the defendant, that he possessed the legal right to take, and sell the goods. It would operate severely, indeed, on the defendant, if he was to be liable both to *Morris*, and the plaintiff.

A new trial must be granted, with costs to abide the event of the suit.