## Smith *et al.* Appellants, *v.* Everly *et al.*

The act of 1824 gives to judgment creditors a lien on all the property of the debtor real and personal from the time of the rendition of the judgment, which can only be defeated by some act of the creditor deemed fraudulent against other *creditors.*

An injunction does not destroy, but only restrains an existing lien; as soon as the injunction is dissolved the lien is again restored to all its incidents.

The lien extends to the money produced by a sale of property under execution, as well as to the property itself, and when the sale is in virtue of several executions, the court will direct the money to be applied to the discharge of the elder judgment.

APPEAL from the circuit court of Lafayette county.

This case originated from a controversy between several execution creditors as to the appropriation of moneys levied upon various executions against James G. Trigg.   Everly, Rees, and several others obtained judgments against Trigg in the circuit court of Yalobusha county, in September, 1837, upon which executions issued and were levied; forthcoming bonds given by Trigg and forfeited, and so returned to the March term, 1838, of the court from which they issued.

R. L. Smith & Co. and the other appellants obtained their judgments against Trigg in the circuit court of Lafayette county, in May, 1838, upon which executions were likewise issued, forthcoming bonds taken and forfeited, and so returned to the November term, 1838, of that court.   At the instance of Trigg, the executions which were afterwards sued out by the appellees, on the forthcoming bonds, were enjoined in chancery.   The injunction was dissolved in January, 1839, and alias executions issued to the sheriff of Lafayette county.   In the mean time, however, the executions of the appellants had been levied.   The record states that all the executions were levied, and were in his hands at the time of the sale.   The sheriff returned the money into court and asked the judgment of the judge as to which of the several executions in his hands he should apply it?   It was decided that it should be applied to the satisfaction of those of the appellees, and that is the error complained of.

[Smith *et al.* Appellants, *v.* Everly *et al.*]

Clayton for appellants.

At common law a *fieri facias* had relation to its teste, and bound the goods of the defendant from that time; by statute 29 Chs. II. the execution does not bind the goods till delivery to the sheriff. Com. Dig. Ex'n. D. 2. The execution first delivered, is to be first satisfied. *Ibid.* Where the lien of several judgments or of several executions is at first equal, the creditor who is most vigilant, and first gets his execution into the hands of the sheriff, is entitled to priority of satisfaction. Waterman *v.* Haskins, 11 Johns. 228. 1 Pirtle's Dig. 409, sec. 25. 4 Bibb, 29. 2 J. J. Marshall, 422. 1 Pirtle's Dig. page 416, sec. 89. The principle that the vigilant creditor is entitled to preference, has been sanctioned by the High Court of Errors and Appeals of this state. Michie *v.* the Planters' Bank. The lien of a *fieri facias* is not continued after the return day. 4 Bibb, 532. 1 Pirtle's Dig. 410, sec. 35. An execution issued, but suspended by injunction, creates no lien. 4 Bibb, 263. 1 Pirtle's Dig. 410, sec. 29. An injunction obtained by a person in custody upon a *ca. sa.* operates his discharge from custody. 1 Wash. 120–3. If it be after levy of the *fi. fa.* the goods are restored to the debtor. 1 Wash. 120–3. 6 Mun. 184. 2 Haywood's Rep. 81. Tucker's notes 560. The obtaining of an injunction and giving bond and security, therefore, releases the lien of an execution upon personal property. 1 Martin & Yerger, 373. 3 Yerger, 484. 2 Haywood 81. See the note of Judge Haywood in that case, and the argument of Chief Justice Marshall, in 1 Wash. 122.

If the plaintiff sues out a second execution before the property taken under the first is disposed of, he destroys the lien on the property taken under the first. 1 Call. 428. The levy of an execution and the taking of a forth-coming bond, is the satisfaction of the original judgment, its lien is gone until forfeiture of the bond, when a new lien attaches. Lusk *v.* Ramsey, 3 Mun. 417, and seq.

To apply these principles to the case under consideration. The judgment under which the defendants claim the money were rendered four of them in September, 1837, one on the 15th May, 1838, and one 19th May, 1838. Forth-coming bonds were given on the first four executions, which were forfeited on the 19th of March, 1838. These executions were enjoined in September,

1838, bond and security were given, and the injunction dissolved at the January term, 1839, of the court. The judgment of the plaintiffs was rendered in May, 1838, and judgment upon the forth-coming bond in November, 1838, and the execution from this last judgment passed into the hands of the sheriff, and had been levied upon the property, which was sold before the executions of the defendants issued upon the dissolution of the injunction. The lien of the executions did not continue after their return day, unless a *venditioni exponas* had been issued. 4 Bibb, 532. 1 Call. 428. The return day of the executions of the defendants was in September, 1838, their lien expired at that time, or could only be continued in existence by a *venditioni exponas*. This was not issued. After the dissolution of the injunction a new *fieri facias* was issued, which was a clear abandonment of the lien created by the alias. 1 Call. 428. The injunction likewise, of itself suspended the lien of the executions enjoined, and during its continuance opened the door for the lien of other executions. The bond and security given for the injunction come in place of the creditor's lien. 4 Bibb, 263. 1 Martin & Yerger 373. 1 Pirtle's Dig. 410, sec. 29. In November, 1838, during the time when there was an entire suspension of the lien of the judgments of the defendants, according to the principles above laid down, the plaintiff's judgment upon the forth-coming bonds were rendered, and their lien attached and continued up to the day of sale. The alias executions of the plaintiffs came to the hands of the sheriff before the injunction upon the others was removed, and by the well settled common law doctrine, were entitled to priority of satisfaction. Even in cases of equality of lien, preference is given to the vigilant creditor. 11 Johns. 229. But here there was no equality of lien, the judgments of the defendants were enjoined in September, 1838, their lien was suspended, and they could not afterwards come in and defeat the previous lien of the plaintiffs. An execution issued but suspended by injunction creates no lien. 4 Bibb, 263. 1 Pirtle's Dig. 410, sec. 29. An injunction obtained by a person in custody upon a *ca. sa.* operates his discharge from custody. 1 Wash. 120–3. If it be after levy of a *fi. fa.* the goods are restored to the debtor. *Ib.* 120–3. 6 Mun. 184. 2 Haywood, 81. Tucker's (Henry St. George) Com. 560. The

obtaining of an injunction and giving bond and security, destroys the lien of an execution upon personal property. 1 Martin & Yerger, 373. 3 Yer. 484. These cases show that the lien of the judgments of the defendants was extinguished by the injunction, and that its dissolution subsequent to the lien of the plaintiffs' judgment could not affect its priority. Thus far the case has been considered entirely upon common law principles; these clearly give the money to the plaintiffs. Is there any thing in the statutes of this state to produce a different result?

By the act of 1822, the property of the defendant is bound only from the time of the delivery of the execution to the sheriff. It is said that by the act of 1824, the judgment creates a lien. It is here submitted that by a fair construction, that act relates only to judgments confessed with stay of execution: notwithstanding the stay a continuing lien is created. The provision comes in by way of proviso, which always operates as an exception. The clause therefore does not introduce any general change, does not repeal the act of 1822, but only points out the effect of stay of execution upon judgments confessed. During the time specified for the stay, the lien is to continue, but is not to extend to an indefinite space of time. Without this provision, according to the case of Michie *v.* The Planters' Bank, the lien would be lost by the stay of execution; with it, it should only be preserved during the period stipulated for the stay. In practice, the act of 1822, is still in force, since the sheriffs always endorse the date of the delivery of executions. If the court, however, should give a broader construction to the act of 1824, is it not manifest that the injunction, and the bond and security which it provides, stand in stead of the judgment lien. The law requires that the party obtaining an injunction shall give bond and sufficient security, conditioned for paying all money and costs, due or to become due to the plaintiff at law. Rev. Code, 95. This comes in place of paying the money into court according to the English rule. In case of an appeal or writ of error and supersedeas this is so, and there is the same reason that it should be so in case of injunctions. It is an established principle that where one creditor has two securities, and another but one, the former will be compelled to exhaust the security upon which the latter cannot go, before he can come upon

the fund of the latter.   It is upon this principle that the courts of other states have held, that an injunction with bond and security destroys the judgment or execution lien upon personal property. An appeal suspends the effect of the judgment when *bond* and security are given, a forthcoming bond satisfies the judgment and destroys its lien.   This is the law in other states; nor is there any statute in this state which would make the law different here.

Besides the executions of the defendants which are levied upon the property sold, there are two others which stand upon an entirely different footing.   These judgments were rendered in May, 1838, executions were issued and returned, no property found, to the November term, 1838, and no farther executions issued till after the sale of the property of Trigg, by the sheriff, when they were issued and the money claimed under them.   These judgments bear the same date with one of the plaintiffs.   Here was a degree of negligence on their parts, which certainly gave priority to the plaintiffs.   The case of Waterman *v.* Haskins, 11 John. 230, forcibly illustrates this.   By a statute of New York, the lien of a judgment attaches from the time of filing the record of the judgment.   Where two judgments are filed at the same time, and are thus equal at the commencement, one creditor may obtain preference over the other, by greater diligence in issuing his execution. 11 John. 230.   This principle is recognised in the case of Michie *v.* The Planters' Bank: it excludes the two last mentioned executions, and moreover has an important bearing upon the whole case, because it shows that between creditors originally upon an equality, priority is given to the most vigilant.   Whilst the defendants have delayed the prosecution of their claims, the plaintiffs have proceeded with all the diligence which the law will allow.   The circuit judge excluded the execution of Warner & Bayard, and the other in the same situation; but did not run the principle its full length.   If it is now done, it will be decisive of the case in favor of the plaintiffs.

Hughes on the same side, cited 4 Litt. 169; 6 Ham. 233, Note, A.

Thompson for the appellees.

The act of 1824 received an early exposition in the case of Biggam *v.* Merritt, Walker's Reports, 430, in which case it is de-

cided, that in the appropriation of money in the hands of the sheriff, who had levied an execution in favor of the junior judgment creditor, as well as one in favor of the elder judgment creditor, ·that the lien given by the statute required the eldest judgment to be first satisfied.   This opinion we understand to be sanctioned by this court, in the case of Smith & Picket *v.* Ship, 1 Howard's Rep. 236.   If the judgment liens had been equal, and the executions of the plaintiffs in error by superior diligence had been first levied, a question entirely different from the one raised in the record, might have been presented for the decision of the court.   In that state of the case, the authority of Adams *v* Dyer, 8 Johnson's Rep. and of Waterman *v.* Haskins, 11 Johnson's Rep. 229, might have been applicable.   It might, indeed, be considered that the opinion of this court in the case of Burney *v.* Boyett, 1 Howard's Rep. 39, had settled the law in favor of the most vigilant creditor.   But the present is not that case.

The injunction which had been obtained against the judgments of the appellees had been dissolved; executions issued and placed in the sheriff's hands, all before the levy and sale.   Upon the subject of the injunction, it is believed that the cases cited from the Tennessee Reports, when looked into, will not be found to militate against the claim of the appellees.   The case of Lynn *v.* Gridley, Walker's Rep. 548, is authority direct, in favor of the appellees, on the question raised as to the effect of the injunction, and also in relation to the appropriation of the money in the present case.   As to the lien of the judgment, we consider this court in the case of John J. Michie *v.* Planters' Bank, decided at the present term, as virtually settling the law, as the counsel for the appellees contend for it.   There it is shown how a prior judgment lien may be lost by negligence, &c.   Here there has been no negligence or delay, except that produced by an injunction, which the appellees could not resist.   It is contended by the counsel for appellants, that the court below in the exercise of its discretion, should have appropriated the fund to the payment of the junior judgments, because, as they allege, it appeared that the execution in favor of the appellees was against others as well as James J. Trigg: and that it appeared the execution of appellants, although against others also, had after the sale been

quashed, as to the other persons against whom it had issued, with said Trigg.

To this position it is believed several answers may be opposed. The other persons against whom the execution of appellants issued, were the Messrs. Nelson, securities in the forthcoming bond —the execution alone was quashed—the judgment on the forthcoming bond remained in full force. The execution must issue against all the parties to the judgment; then if the execution was quashed as to some of the parties to the judgment, did it not *ipso facto*, fail as to all; and would the appellants have any rights under this mutilated execution?

But if the execution alone was quashed, then the appellants can resort to their forthcoming bond and hold the securities liable; if their forthcoming bond was quashed with the execution, then their claim to this fund would have nothing to rest on. The record, it is acknowledged, does not speak of quashing any thing, but the execution, so far as the securities were concerned. The appellants, then, have other security for their debt, without claiming any part of the present fund, while at the same time they are assigning as a reason, why the court should not permit the appellees to share it, that forsooth they have other security.

It appears from the abstract furnished by the counsel of appellants, and the statements in the judge's opinion, that the other persons against whom the execution of appellees issued, were the securities in the forthcoming bond; and it is contended by the counsel of appellants, that the court will in the exercise of an *equitable discretion* break the hold of the appellees upon this fund, upon which we contend they have a legal lien—and for what purpose? That they may be compelled to pursue the securities in the forthcoming bond. The converse of this proposition, we believe to be the rule in equity.

Mr. Justice TROTTER delivered the opinion of the court.

Two grounds have been assumed in the argument in support of this assignment of error. 1. That the injunction displaced the lien of the judgments in favor of the appellees, so as to let in the subsequent incumbrance of the appellants' judgments. 2. That the appellees should have been driven to their remedy against the

securities in the forthcoming bond, and been forced to exhaust that fund before they could be permitted to take the fund in the hands of the sheriff.

The act of 1824, gives to judgment creditors a lien upon all the property of the debtor, real and personal, from the time of entering up the judgment. This lien can only be defeated or postponed by some act of the creditor, which is deemed fraudulent in law, as against other creditors. Thus, it may be deferred to that of a younger judgment creditor, by negligence in not pursuing it in the mode prescribed by law, or by a contract with the defendant to suspend it to the prejudice of other creditors, as was decided by this court at the present term, in the case of Michie *v.* The Planters' Bank. It can never be lost or prejudiced, however, by any improper or fraudulent conduct of the defendant. An injunction does unquestionably suspend the execution of the judgment, and by consequence that of the lien, but it does not destroy either. The execution is merely restrained, but the force and effect of the judgment is not at all impaired. As soon as this restraint is removed by a dissolution of the injunction, it is again restored to all its capacities and all its incidents. Execution again issues, of course, and without the necessity of any new order. Rev. Code, p. 95. Such was the opinion of the supreme court in the case of Lynn *v.* Gridley, Walker's Rep. 548. In the case of Conway *v.* Jett, 1 Martin & Yerger's Rep. 373, the court lays down the same rule. The judge who delivered the opinion of the court, states, that the clerk is authorised, upon the dissolution of an injunction, to enter judgment against all the obligors in the injunction bond. This gives to the creditor a new and more comprehensive lien, and therefore supersedes that on the original judgment. Having in this respect an effect similar to the judgment on a forthcoming bond in this state. The clerk has no such power in this state, and therefore the reason of the rule in Tennessee cannot apply to a case here. The judge in that case remarks, that it would be highly unreasonable to hold that the injunction of itself can defeat the creditor's lien; and says it can only be lost by the equivalent or higher lien on the new judgment on the bond. The other cases in Tennessee do not conflict with this principle.

The appellees are then entitled to this money, without regard

16*

[Smith *et al.* Appellants, *v,* Everly *et al.*]

to which of the executions the sheriff may have levied it under, for if the lien subsists, it is a lien as well upon the proceeds of the property, as upon the property itself, whilst they are yet in the sheriff's hands. Beal *v.* Allen, 18 J. Rep. 363. The appellees are entitled to it, unless they are precluded by the force of the second objection which is taken by the appellants. Was the judge below bound to unloose the hold which the law gave them upon this fund, because they had a remedy against the securities? We think not. In the case of Reeves *v.* Johnson, 7 Halstead's Rep. 30, the same objection was urged. Reeves had a judgment, which gave him a lien. An attachment was levied upon the property of the debtor, who had absconded; but the levy was subsequent to the date of the judgment. It was a question between the lien of the attachment and that of the judgment. It was said the junior lien ought to be preferred, because Reeves could resort to his remedy against the bail of the defendant. But the court said it would be a violation not only of the legal right, which he had to the benefit of his execution, but unjust also to the securities. But besides these considerations, we do not see how this doctrine, if it were true, could be invoked by the appellants. They are as open to the application of the rule as the appellees. Their executions were only set aside. The bond is still in full force, and they have for any thing which appears to this court, as full a remedy against the securities in the forthcoming bonds under this execution, as the appellees can have against those on their bonds.

We are clear upon both grounds, that the appellees are entitled to the money.

Let the judgment be *affirmed.*