| | |
|---|---|
| 24 | 127 |
| 79 | 436 |
| 24 | 127 |
| 80 | 97 |
| 24 | 127 |
| 89 | 266 |
| 24 | 127 |
| 118 | 637 |
| 24 | 127 |
| 144 | 713 |

## ELIAS BLUM v. J. R. ROBERTSON.

ATTORNEY IN FACT.—When one is appointed, by written instrument, the attorney in fact of another, his power to bind the principal must be ascertained alone

Elias Blum *v.* J. R. Robertson.

from the language of the instrument by which he is clothed with authority to act for and in the name of the principal.

Same—His Power.—The agent cannot, in the exercise of the power delegated, bind the principal by any act beyond the power, or beside it, though it is competent for him to perform such subordinate acts as are usually incident to or necessary to effectuate the object expressed.

One Dealing with Attorney in Fact.—The party dealing with an attorney in fact is bound to know at his peril what the power of the agent is, and to understand its legal effect.

Construction of Power of Attorney.—V., the owner of an unconfirmed Mexican grant, executed to B. a power of attorney, which, after reciting the appointment, read as follows : " I give him full, complete, and perfect power, as my said attorney in fact, to do any and everything to secure my title to said rancho, and to prosecute the pretension of the same in all the Courts of the United States ; and by this I ratify, confirm, and approve all the doings of my said attorney in fact concerning said rancho." *Held*, that the power did not confer on the agent any authority to sell the land, or any part of it, or enter into any contract which would bind the principal to convey the same or any part thereof.

When Equitable Title must be Pleaded, and how.—If the defendant, in an action of ejectment, relies on an equitable title to the demanded premises as a defence, it must be pleaded, and the answer setting it up must, in substance at least, possess all the elements and essential qualities of a bill in equity, and the equity presented must be of such a character that it may be ripened by the decree of the Court into a legal title to the premises, or such as will estop the plaintiff from the prosecution of the action.

Parol Agreement to sell Land.—A party who claims a right to a conveyance of land under a parol contract on the ground of part performance, must make out by clear proof the agreement as alleged ; and the acts of performance proved must be unequivocal evidence of such agreement, and the agreement must be certain in its terms, and just and fair in all its parts.

Tenancy at Will—How Created and Terminated.—A tenancy at will cannot exist without express grant or contract, and when it does exist, the tenant is entitled to a reasonable notice of his landlord's intention to terminate the estate before an action can be maintained against him for the possession.

Appeal from the District Court, Fourth Judicial District, Contra Costa County.

The facts are stated in the opinion of the Court.

*E. A. Lawrence*, for Appellant.

The objection was taken, upon the argument, that if this is an equitable defense, defendant does not *ask for specific performance* in his answer, in compliance with *Lestrade* v. *Barth*, 19 Cal. 660.

But the answer to this is obvious. Agard is not yet entitled to *specific performance*, and will not be until after the patent

issues, and the payment of one thousand dollars. These events are in the future. He cannot compel them to convey to him *before* the time fixed in the contract, and they cannot by these proceedings compel him to pay the one thousand dollars to them *before* the time they have specified—that is, before his title is made secure by the issuance of the patent. But he is invested by the contract with the *immediate right of possession*, and, in pursuance of that contract, he was *put in possession* by Mrs. Valencia. Hence, defendant *could* not pray for a specific performance, and *should* not have prayed for an injunction, because an injunction presupposes a right of action in the plaintiff, and may, at some future time, be set aside, and the cause proceed; whereas, upon the facts set forth, defendant would be entitled to have the cause dismissed, with his costs, *because there was no right of action in the plaintiff at the time of suit brought.* Hence, the prayer of his answer was proper, and this case does not come within the rule of *Lestrade* v. *Barth.* It is a *perfect equity* united to possession, which, under our system, is equivalent for all the purposes of defense to a legal title. *(Morrison* v. *Wilson,* 13 Cal. 497.)

It is apparent, from the very general, comprehensive, and forcible language used in the power of attorney, that Mrs. Valencia intended to invest her son, Casimero, with as full and complete authority as she herself possessed, to *make contracts* with lawyers, without placing any limitation upon the means or method of compensation, and also, to " provide the necessary expenses" to employ lawyers and pay the costs of Court and of procuring the attendance of witnesses, and all the expenses incidental to the prosecution of such claims.

This clothes Casimero with all the powers necessary to successfully accomplish the purpose intended by his appointment. (*De Rutte* v. *Muldrow,* 16 Cal. 512—overruling *Billings* v. *Morrow,* 7 Cal. 173.)

" An authority to accomplish a definite end carries with it an authority, so far as the constituent can confer it, to execute the usual legal and appropriate measures proper to accom-

plish the object proposed." (*Fogarty* v. *Sawyer*, 17 Cal. 589, *Valentine* v. *Piper*, 22 Pick. 85.)

Similar language has frequently undergone construction, in chancery, in cases where powers of appointment have been created by deed or will.

Thus, in *Bateman* v. *Bateman*, 1 Atk. 421, it was held that a power to *raise money out of a copyhold estate*, authorized a *sale* of the estate. So, a power to pay debts out of rents and profits, has been held to authorize a *sale or mortgage of the estate*. (*Bostle* v. *Blundell*, 1 Meriv. 193, 232; 2 Story Eq. §§1064, 1064a.)

So, in the case of *Kenworthy* v. *Bate*, 6 Vesey, 793. The Master of the Rolls says: "The case of *Long* v. *Long*, 5 Vesey, 445, determines this: that to enable a person to sell land, it is not necessary to have that authority expressly given to him. There the party had no right to sell, but had a right to charge. * * * But it was held that, as there was nothing to restrain him in the amount, and he might have charged the utmost value, he had done only what was equivalent to that" (by a sale of the premises.) * * * " That is, therefore, a direct determination that *a power to charge includes a power to sell.*"

2. If the power of attorney did not authorize a conveyance, it authorized Casimero to give possession of the land, or in other words, to give a lease at will.

The principal is bound by the action of the agent in matters left to the agent's judgment and discretion, although he act erroneously. (*Ruggles* v. *Wash. Co.* 11 Mo. 496.)

3. But if the Court is of opinion that the power of attorney is insufficient to authorize the execution of the deed or contract, or to give possession of the premises to Bates, Lawrence, and Hastings, then we must look elsewhere for the power.

Counsel cannot say that because Mrs. Valencia had authorized her son to employ counsel to prosecute her claim by a written instrument, that therefore she did *not* authorize him to convey the land by another power of attorney, or even by parol. She might have done so at another time, or by an

independent instrument. The two powers do not clash, and it is perfectly competent to show a power to convey *aliunde*. *Non constat* that there is anything inconsistent in the same agent holding both authorities under two separate powers of attorney. (*Page* v. *Sheffield*, 2 Curtis C. C. Rep. 377.)

In the following cases it was held that a parol authority to an agent to make a contract for the sale of land is equivalent to a parol sale by the principal himself: 18 Ill. 160, 250, *Van Horn* v. *Frick*, 6 S. & R. 90, *Workman* v. *Guthrie*, 29 Penn. 495.

4. Mrs. Valencia told Davis, one of the grantees, that she had given her son a power of attorney; and in the case of *Blood* v. *Goodrich*, 12 Wend. 535, 9 Wend. 68, it was held that the parol acknowledgment by the principal that the agent had authority to enter into a sealed contract was competent evidence of his authority.

In *Corlin* v. *Jackson*, 14 Wend. 619, where a party claimed land by deed executed under an alleged power of attorney from the owner, it was held in an action of ejectment for the land that he might give in evidence as proof of the power the declarations of such owner that such power was valid and as alleged in the deed, such *declarations being made previous to the accruing of defendant's interest.*

The declaration to Davis, one of the grantees holding under the contract, " that her son Casimero had a power of attorney from her, and he had informed her that he had entered into a contract with myself and the lawyers, giving us half of the ranch, that she was satisfied with the contract, * * * and was glad that the business had got into our hands," is not only competent evidence of the power of attorney, but is *prima facie* evidence that she had given him the authority, by power of attorney, to do the act which she declared he had done to her satisfaction.

Mrs. Valencia ratified the deed or contract with Bates, Lawrence, and Hastings, of 1854, by conveying to Davis, in 1859, two tenths of the ranch by a valid deed under seal, upon the

same consideration, and solely for the purpose of ratifying the same.

This Court has repeatedly held that a subsequent ratification is equal to an orignal authority. (*Taylor* v. *Robinson*, 14 Cal. 400 ; 13 Cal. 230 ; *McCracken* v. *San Francisco*, 16 Cal. 623 ; 1 Hilliard Vend. 436 ; Story on Agency, §§242, 244, 345.)

The deed to Davis, being intended as a ratification or confirmation of the contract with Bates, Lawrence, Hastings *et al.*, it will be a ratification of the *whole* contract, for there can be no ratification by halves. (See *Newton* v. *Bronson*, 3 Kern. 594 ; *Tilton* v. *Nelson*, 27 Barb. 595 ; *Powell* v. *Gasson*, 18 B. Monroe, 179 ; 1 Hilliard Vend. 338, §27 ; Story on Agency, §250.)

*E. W. F. Sloan*, for Respondent.

The letter of attorney, though under seal, grants no power to the agent either to sell or convey the estate of the principal, or any part of it. The power is limited to the employment of counsel to prosecute her claim of title to the Rancho de San Felipe. (*Berrien* v. *McLane*, 1 Hoff. Ch. R. 439 ; *Billings* v. *Morrow*, 7 Cal. 173.)

There was no ratification or confirmation of such conveyance on the part of the principal. A ratification could only have been by deed. (*Hunter* v. *Parker*, 7 Mees. & Wels. 322, 343 ; *Hanford* v. *McNair*, 9 Wend. 54 ; Story on Agency, §242.)

There is no executory agreement contained in the deed in question on the part of M. M. Valencia, who is there made to figure as the party of the second part.

*If it is her deed, then it took effect as a present immediate conveyance to Bates et al. of an undivided half of the ranch.*

If it is *not* her deed, it could not have had any operation upon her estate at all.

*The only executory agreement contained in the instrument, is on the part of Bates and others, parties of the first part.*

The answer does not allege that she ever made any other

contract for the conveyance of her land, or any part of it, to Bates *et al.*, to Agard, or to the appellant, either orally or in writing. Nor does it charge that she ever agreed, in any form, to enter into such contract with them, or any of them.

Independent of the absence of any such allegation in the pleadings, there is no proof tending to show that either by deed, writing without seal, or otherwise, she ever made an executory agreement with them, or any of them, to sell or convey, or to cause to be sold or conveyed, her land, or any part of it.

Counsel for the appellant insists that the deed in question, being defective or void as a conveyance, must be treated as an executory agreement to sell, and professes to cite cases in support of the proposition.

But the principles upon which those cases proceed do not apply to the case at bar.

Where, by letter of attorney, *not under seal*, an agent is appointed expressly to sell and convey the land of the principal, and the attorney does sell, and executes and delivers a formal deed of conveyance in the name of his principal, there the act is not good as a conveyance of the legal estate, because, though the language of the letter of attorney may be comprehensive enough, yet, inasmuch as it is not under seal, the attorney in fact could not execute a deed. If, however, the purchase money were paid by the purchaser, and received by the principal, it being his clear intent to bestow the power, the formal deed would be good as a contract of sale, no seal being necessary in a power for that purpose.

Where the attorney, having sufficient power to sell and convey by deed, executes the conveyance in his own name, instead of the name of the principal, describing himself, however, as acting alone in the capacity of agent for the other, then the deed has been treated as a valid executory contract of sale.

Such ruling proceeds upon the ground that there was no lack of power in the agent, but there was defect in the execution of it. And, inasmuch as the agent could contract to sell, and did so, and a written memorandum of the sale, signed by

him in his own name, for his principal, would answer the demands of the Statute of Frauds, there is no impropriety in holding the sale to be good, though the deed could not operate as a conveyance of the legal estate.

This is all that can be deduced from the numerous authorities cited by appellant's counsel.

The principles are plain enough, but cannot be made to apply to this case, where no power, either to sell, convey, or to contract to sell or convey, is to be found in the letter of attorney, with or without seal.

There is no pretense for saying that the letter of attorney in question constitutes or creates an "universal agency." No general expressions can make it so. (Story on Agency, §21.)

Davis, having taken from Brady an assignment of his interest, procured from M. M. Valencia, in 1858, a formal conveyance of two tenths of the ranch.

It is not, nor does it purport to be, a deed of ratification. It contains no reference to the deed made by Casimero Briones.

It seems to vest Davis with a legal title of two undivided tenths of the ranch.

Neither the appellant, nor any one under whom he claims to hold, has any connection with it.

By the Court, CURREY, J.

This is an action of ejectment, brought to recover the possession of a certain tract of land in the County of Contra Costa, known as the Rancho "Boca de la Cañada del Pinole," or San Felipe, containing three square leagues of land. The plaintiff alleges that on the 20th day of March, 1860, he was the owner in fee simple and in the possession of the undivided one sixth part of said rancho, and that on the day following, while he was so the owner and in possession of said land, the defendant unlawfully entered thereon and ousted him therefrom, and has, from that time to the commencement of this action, which was the 21st day of April, 1861, withheld, and still withholds, said land from plaintiff, to his damage in the

sum of twenty-five thousand dollars.  The plaintiff then prays for judgment for the recovery of the possession of the land, and for damages, etc.

To the complaint, the defendant filed an answer, first denying, generally and specifically, each and every allegation therein contained; and, in the second place, alleging affirmatively that one William B. Agard became the owner of the undivided three tenths of said tract of land by conveyances executed and delivered to him prior to the time of the plaintiff's alleged seizin, by George C. Bates, Edwin A. Lawrence, and S. C. Hastings, who, with William H. Davis and Lewis Brady, became "invested with the title in fee simple absolute to the undivided one half of said rancho," by virtue of a certain conveyance made by Maria Manuela Valencia, by her attorney in fact, Casimero Briones, bearing date on or about the 31st day of May, 1854, and that such deed was duly recorded in said county on that day; that after said conveyances were executed and delivered by Bates, Lawrence, and Hastings, to said Agard, to wit: on the 31st day of May, 1856, he entered into the possession under said conveyance of May, 1854, with the full knowledge, consent, and approval of Madame Valencia, and that from that day to the time of making such answer, the said Agard "has been in the quiet, peaceable, and undisturbed possession of said premises, with the full knowledge of the said M. M. Valencia and of said plaintiff, of all his rights in said premises, and with the claim of title to the undivided three tenths of said rancho;" that defendant was the agent of said Agard, and as such agent, long before said 20th day of March, 1860, entered into the possession of said land to occupy and retain possession of said three tenths thereof for said Agard, and that "he ever since hath and now doth retain and hold possession of the same solely as agent of said Agard, and that he has and claims no right, title, interest, or possession of said premises, except as the agent of said Agard." The defendant then prays that the complaint may be dismissed, and that he may have judgment for his costs.

These affirmative allegations of the answer the plaintiff controverted by replication.   By the pleadings, the parties agree that said tract of land was granted to the said Madame Valencia by the Mexican Government in 1841, and that her claim and title to the same had been finally confirmed by the Supreme Court of the United States.

On the trial the plaintiff produced, in evidence, a deed executed by Mrs. Valencia, bearing date and acknowledged by her on the 20th of March, 1860, which was duly recorded on that day, by which she conveyed to Simon Blum, Elias Blum, and T. A. Brown, all and singular her right, title, and interest in and to said rancho, excepting four hundred acres. It was then admitted by defendant that he was and had been in the possession of the portion of said rancho set forth in his answer, as the agent of said Agard.

To maintain the affirmative matter pleaded by defendant, he gave in evidence a power of attorney, under seal, executed by Mrs. Valencia, on the 17th day of May, 1854, to Casimero Briones, her son, which was acknowledged and recorded, by which she constituted him her true and legal attorney, for her and in her name to take all necessary steps and to do all necessary things to secure the validity of her claim to said rancho ; to employ lawyers, gather testimony, and, in general, to do all that was necessary to secure her right, title, and pretension to said rancho, and to provide the necessary expenses for the same ; and for this she declared : " I give him full, complete, and perfect power, as my said attorney in fact, to do any and everything to secure my title to said rancho, and to prosecute the pretension of the same in all the Courts of the United States; and by this I ratify, confirm, and approve all the doings of my said attorney in fact concerning said rancho."   The defendant then gave in evidence an instrument in writing, bearing date May 22d, 1854, purporting to have been entered into by Bates, Lawrence, and Hastings, " partners at law at San Francisco," William H. Davis, and Lewis Brady of the first part, and Maria Manuela Valencia of the second part, by which the parties of the first part covenant

and agree to and with her to undertake to perfect in the Federal Courts her title to said rancho, and to render their services in said Courts, and obtain a judicial confirmation of her claim, and to bear all the expenses in the premises, including the costs of a survey and partition of said tract of land; and after the patent for the same should be issued, to pay to her or to her legal representative one thousand dollars in addition; and then follows, in the same instrument, that in consideration of the premises, and to enable the parties of the first part to prosecute said case with vigor, the said Valencia grants, sells, and conveys to them all the one undivided half of the said rancho. This instrument, by the *testatum* clause, purports to be executed by the parties respectively under their hands, and appears to have been signed by the several persons comprising the party of the first part, and also by Mrs. Valencia, by Casimero Briones, "her attorney in fact," and recorded on the 31st day of May, 1854. It appeared on the trial that this instrument was executed by the parties of the first part, and that the name of the party of the second part was subscribed thereto. Casimero Briones' name does not appear anywhere in said instrument, except as subscribed under the name of Maria Manuela Valencia, as follows: "Per Casimero Briones." It also appeared that Mrs. Valencia was not present when said instrument was thus executed.

The defendant also gave in evidence deeds of conveyance executed by Bates, Lawrence, and Hastings, respectively, to said Agard, whereby Bates and Hastings each undertook to convey to him the undivided one tenth of said ranch; and Lawrence conveyed to the said grantee all his right, title, and interest in said property. The deeds of Bates and Lawrence were executed and recorded in the year 1856, and the deed of Hastings was executed and recorded in January, 1857. In these deeds the grantors referred to the title of Mrs. Valencia to the land as the source of their own, and to the instrument bearing date May 22, 1854, as the means by which they acquired their respective interests.

The defendant entered upon the ranch in 1856, after the

deeds of Bates and Lawrence to Agard were executed, as his agent, and from that time to the trial of the cause was in possession of the land or living upon it, claiming to be in possession of an undivided three tenths of it, as such agent.  It does not appear that the defendant was let into the possession by Mrs. Valencia; but the defendant himself testified that some six weeks or two months after he first took possession he had a conversation with her for the first time, and between that time and August, 1860, he had occasionally conversed with her in respect to his occupation for Agard, and that at one of those conversations she expressed herself as very much pleased that Mr. Agard had purchased " into the ranch from the lawyers."   The defendant also testified that she always showed him great respect as Mr. Agard's agent.   While defendant was so in possession, Agard made improvements on the land of the value of from eight hundred to a thousand dollars.  The defendant further testified that at one time Casimero Briones, by instructions of his mother, showed him a contract between Bates, Lawrence, Hastings, Davis, and herself, granting them one half of the ranch on their obtaining the final confirmation of it and paying her one thousand dollars.   It was proved in general terms that Bates, Lawrence, and Hastings rendered the professional services by them to be performed, as mentioned in this instrument, and that some expenses had been paid by Agard in the employment of counsel to attend to the case, and some other expenses that had accrued subsequent to the final decree of confirmation.

It was also proved by the defendant that Mrs. Valencia had, by deeds, conveyed two undivided tenths of said rancho to William H. Davis, and an undivided interest of four hundred acres to Encarnacion Briones de Vaca, both of which deeds were executed and recorded before the execution and recording of the deed under which the plaintiff claimed; but the defendant did not show that he had any interest in or occupied said premises under either of such deeds.

Much of the evidence offered on the part of defendant was objected to by the plaintiff, on the ground that the same was

irrelevant to the issues joined, and incompetent for the purposes offered.

The Court before which the case was tried rendered judgment in favor of the plaintiff against the defendant for the recovery of the possession of the premises in controversy, and for one thousand dollars damages for the wrongful withholding of the same premises from plaintiff. In due time the defendant applied for a new trial, which was denied. From the order denying the application for a new trial and from the judgment the defendant appealed, and now asks this Court to reverse the judgment, mainly on the grounds :

First—That the power of attorney from Mrs. Valencia to her son (Casimero) was sufficient to authorize him to convey in her name the tract of land mentioned; and that by the instrument bearing date May 22, 1854, Bates, Lawrence, and Hastings acquired title in fee to an undivided three tenths of the property; and that said Agard, under whom and by whose authority the defendant entered and occupied the land, became invested with title in fee to the same undivided three tenths thereof by the deeds of conveyance executed to him by Bates, Lawrence, and Hastings, respectively ; and that therefore the defendant was at the commencement of this action, and from thence has been, entitled to the possession of said tract of land.

Second—That, if the foregoing proposition be deemed untenable, then Mrs. Valencia should be held bound to convey the undivided half of the land on the happening of the events mentioned in said instrument in writing, and which were thereby made conditions precedent to her obligation to convey, for the reasons that subsequent to the date of such instrument she recognized its existence and ratified it by letting Agard into the possession of the land, and thereafter encouraged him by words and conduct to make expenditures in improvements on the premises, by which she became estopped from denying the existence of a subsisting right in him to possession of the land in controversy ; and that, until default on the part of the parties of the first part in said instrument named, an action of

ejectment ought not to be maintained by her or her grantees against the said Agard or his agent in possession.

Thus the appellant relies, first, on a defense at law upon his supposed legal title, and second, on a defense in equity upon a contract binding Mrs. Valencia, the existence of which appellant asks the Court to find from the facts and circumstances proved under his answer, setting up, as he claims, this second ground of defense.

By the letter of attorney executed by Mrs. Valencia to her son, he was constituted her agent for a particular object, and his powers are to be ascertained alone from the instrument by which he was clothed with authority to act for her and in her name and stead. In the exercise of the power delegated, the agent could not go beyond it nor beside it, though it is competent for him to perform all such subordinate acts as are usually incident to or necessary to effectuate the object expressed.

In order to bind the principal in such case, it must appear that the act done by the agent was in the exercise of the power delegated, and within its limits. (*Mech. Bank* v. *Bank of Columbia*, 5 Wheat. 326.) No man can be bound by the act of another without or beyond his consent; and where an agent acts under a special or express authority, whether verbal or written, the party dealing with him is bound to know at his peril what the power of the agent is, and to understand its legal effect; and if the agent exceed the boundary of his legal authority, the act, so far as it concerns the principal, is void. This is a rule of the common law, and is indeed elementary in the doctrine of powers. (*Beals* v. *Allen*, 18 John. 363; *Hubbard* v. *Elmer*, 7 Wend. 446; *Rossiter* v. *Rossiter*, 8 Wend. 494; *North River Bank* v. *Aymar*, 3 Hill, 263; *Cox* v. *Robinson*, 2 Stew. and Porter, 91; *Stow* v. *Wise*, 7 Conn. 214.)

The power of attorney under consideration authorizes Casimero to take all the necessary steps and do all necessary things to secure the right, title, and claim of Mrs. Valencia to the ranch therein mentioned, and to employ lawyers, gather testimony, and to provide the necessary expenses for the same.

A sale of the land, or part of it, does not appear to have been contemplated by Mrs. Valencia.  If it was, she entirely failed to express any such intention, or to confer on her attorney any power to convey or contract in her name, or otherwise to convey any portion of it; and it is not competent for Courts to bind her by the acts of another to perform an obligation which she never incurred.

In view of what we deem well settled rules of law on the subject, we hold that the power of attorney before us conferred no authority on the attorney to convey, in the name of his constituent, the land therein referred to, or any part thereof, and hence, the deed, or contract, whichever form it may be, which appellant's counsel contends was executed by authority of such power of attorney, was, as a conveyance, or a contract to convey, utterly void.

The disposition which we have made of the first branch of appellant's case brings us in the next place to the consideration of his alleged equitable defense.

The late Supreme Court held in a number of cases that a person having a perfect equitable title to land in possession could use it effectually in resistance to an action of ejectment prosecuted by one holding the legal title.  (*Arguello* v. *Edinger*, 10 Cal. 157; *Morrison* v. *Wilson*, 13 id. 497; *Weber* v. *Marshall*, 19 id. 457.)

In such case the defense relied on must meet the claim made by the plaintiff to the possession, and the equity presented must be of such a character that it may be ripened by a decree of the Court into a legal right to the premises the possession of which is sought to be recovered, or such as will estop the plaintiff from the prosecution of the action.  (*Lestrade* v. *Barth*, 19 Cal. 660.)  It is not enough that a defendant may have such a defense in fact.  He cannot avail himself of it without pleading it, in which case his answer must, in substance at least, possess the elements and essential qualities of a bill in equity, on which the Court could, upon proper proofs, pronounce a decree for his present protection or final relief. (*Estrada* v. *Murphy*, 19 Cal. 272; *Downer* v. *Smith*, 24 Cal.

114.) Has the appellant presented such a case, by his answer and the evidence, as entitles him to a decree in his favor ?

In our judgment the evidence in the case does not warrant the conclusion that Mrs. Valencia was a party to the instrument on which the appellant relies as a contract to convey, either by the execution of it by her son, or by subsequently adopting it as such a contract; nor does it appear that she ever made any other agreement with the parties under whom appellant claims to defend his possession. It is a rule well settled that a party who claims a right to a conveyance of land under a parol or verbal contract, on the ground of part performance, must make out, by clear and satisfactory proof, the existence of the contract as alleged by him; and it is not enough that the acts of part performance proved are evidence of some agreement, but they must be unequivocal and satisfactory evidence of the particular agreement charged in the complaint or answer, as the case may be; besides which, the agreement must appear to be certain in its terms, and just and fair in all its parts. (*Phillips* v. *Thompson*, 1 John. Ch. R. 131; *Parkhurst* v. *Van Cortland*, 14 John. 15; *German* v. *Matchin*, 6 Paige, 288; *Colson* v. *Thompson*, 2 Wheat. 141.)

William H. Davis, who was one of the parties to the instrument bearing date in May, 1854, and the defendant, and his principal, Agard, were examined as witnesses for the defendant, for the purpose of proving that Mrs. Valencia knew of the existence of the instrument, and that she ratified and adopted it by her conduct subsequent to its date. Davis testified that Mrs. Valencia on one occasion detailed to him its contents, and declared its import, with as much precision as the most enlightened person could have done it. Why she should have been so particularly minute in giving him information which, according to his own statement, she must have known he possessed, he does not explain; and another thing which is especially singular in this narrative is, that Mrs Valencia, who, it appears from the record, was a woman nearly sixty years of age at the time, and whose vernacular language was, as the defendant expressed it, "California

Spanish," understood the character and import of the docu-
ment about which she was talking much better than did Davis
and the lawyers who were parties to it.   This must be so, if
we are to regard the answer of the defendant in this action
and the positions assumed by his counsel in the argument of
this case as an exposition of their understanding and interpre-
tation of the instrument.

We are not surprised that the Judge of the Court below
regarded this and other testimony of like character as failing
to establish what is claimed for it on the part of the appel-
lant, even if it could have been admissible under the plead-
ings for such purpose.

It is claimed by the appellant, in his answer, and also in
argument, that Bates and his associates, immediately after
they executed the instrument, took possession of the land
under and by virtue of it, with the knowledge, acquiescence,
and consent of Mrs. Valencia; and also that when Agard took
possession he entered under said instrument, as a conveyance
or contract to convey, with her knowledge, consent, and
approval.   In short, that the several parties were let into the
possession by Mrs. Valencia, in subordination to and in recog-
nition of a right in them respectively to the enjoyment of the
land in common with her under such instrument, as a contract
for a conveyance of an interest therein.   But a new point
is made on the re-argument of the case, granted after judgment
once pronounced affirming the judgment of the Court below,
which is to the effect that the defendant was let into the pos-
session by license of Mrs. Valencia under circumstances that
gave him the status of a tenant or *quasi* tenant at will; and
that therefore the action could not be maintained without
proof that he had notice to quit before it was commenced.

We have examined with care the record to ascertain if there
was any evidence showing that the defendant or his principal,
or his principal's grantors, were let into the possession of the
property by Mrs. Valencia, and have not been able to discover
anything therein that would have justified a Court or jury to
have so found.   Davis and the defendant, and the defendant's

principal, each testified in relation to their several entries and subsequent occupations; but no one of them proved, when his evidence is considered in the concrete, the fact that they or he entered by her permission, or sought to obtain her license so to do. Davis was asked, "Under what authority did you seek to make your location, and to what extent?" And to this he answered, "Under the authority of the contract, and by Mrs. Valencia's consent, who knew I was making the location under said contract. I was then making the location of my interest in the ranch." This entry, he says, was made in the Fall of 1854; and it appears that it was under a claim of right, independent of any license then obtained from her. If Davis entered under the authority of what he terms the contract, for the purpose of making a location of his interest in the ranch, such an entry and location could not inure to the benefit of the defendant, who held no interest in relation with him—and hence, all this testimony may be laid out of view in considering the new point made.

The defendant testified that he took possession of a portion of the ranch in September, 1856, for Agard, with the consent of Casimero Briones and his mother. Subsequently, in answer to a question propounded to him by his own counsel, he said the first conversation he had with her was about six weeks or two months after he first took possession. The testimony of Agard relates entirely to circumstances that transpired after the defendant's entry—none of which involve the question of an entry by license of Mrs. Valencia.

"Tenant at will," says Littleton, (Sec. 68,) "is where lands or tenements are let by one man to another, to have and to hold to him at the will of the lessor, by force of which lease the lessee is in possession. In this case the lessee is called tenant at will, because he hath no certain or sure estate; for the lessor may put him out at what time it pleaseth him."

Any act of ownership exercised by the lessor which is inconsistent with this estate will operate as a determination of it. Thus, if he enters on the land and cuts down trees demised, or makes a feoffment, or a lease for years to com-

mence immediately, the estate at will is thereby determined. (4 Cruise, 242, 245.) This is the common law doctrine on the subject; but the law of tenancy has become very much changed by judicial decisions. The language of the books is, that a tenancy at will cannot arise without express grant or contract, (2 Preston on Abstracts of Title, 25,) and when it does so arise, the tenant is entitled to a reasonable notice of his landlord's intention to terminate the estate before an action can be maintained against him for the possession. In *Jackson* v. *Deyo*, 3 John. 417, it was held that if there was no tenancy or existing and admitted relation of landlord and tenant, the doctrine of notice to quit does not apply.

It seems to be the rule in England and in some of the American States, that an occupant under an executory contract for a conveyance is a *quasi* tenant at will, and that he cannot be evicted without a previous demand of the possession. (*Venable* v. *McDonald*, 4 Dana, 337; *Den* v. *Webster*, 10 Yerger, 510; *Rights* v. *Beard*, 13 East. 210; *Newby* v. *Jackson*, 1 B. & C. 448.) So far as this doctrine has obtained it has been on the theory that the occupant is to be considered a tenant at will. (*Roe* v. *Street*, 2 A. & E. 329; *Jones* v. *Jones*, 10 B. & C. 718.) In New York a different rule has prevailed, and a vendee in possession under a contract to convey is not entitled to notice to quit before an action of ejectment can be maintained against him. (*Jackson* v. *Miller*, 7 Cow. 747; *Jackson* v. *Moncrief*, 5 Wend. 29; *Wright* v. *Moore*, 21 Wend. 233; *Doolittle* v. *Eddy*, 7 Barb. 78.) The relation of landlord and tenant in no sense exists between vendor and vendee. (*Watkins* v. *Holman*, 16 Peters, 54.) Whether the occupant enters under deed or an agreement for a conveyance, or by naked license, his right of entry must be considered as subsisting in grant or contract.

There is nothing in this case from which it can be justly pretended that the defendant entered in pursuance of a license from Mrs. Valencia; the answer sets up no defense except as dependent upon the instrument executed in May, 1854, and it is affirmed throughout by the answer and in argument that

the defendant entered under and by virtue of that instrument, claiming independently of any right granted at the date of his entry. A party thus entering into possession cannot adopt alternative lines of defense which are essentially inconsistent with each other. He cannot in the same case claim that he is by deed absolute, and also under a contract for a conveyance, and also by leave or license requiring notice to quit. (*Shackelford* v. *Smith*, 5 Dana, 237.)

Upon the re-argument of the case, the appellant's counsel insisted that the deed executed by Mrs. Valencia to Davis in 1859 inured to the benefit of Agard, and as a predicate for this proposition it was assumed that the instrument entered into in May, 1854, between Bates and his associates and Casimero Briones, was a deed of conveyance executed by Mrs. Valencia; and as the statute abolishing joint tenancies was not passed until 1855, the deed to Davis inured to the benefit of his co-tenants, and the title thus derived may be set up in defense at law to the plaintiff's action.

This proposition is a *petitio principii*. The premises on which the deduction depends is wanting. The document called the deed of Mrs. Valencia was not her deed, and so we had held, and the counsel for appellant had treated it on the first argument as amounting to no more than a contract to convey. The question as to the invalidity of this instrument as a deed or contract of Mrs. Valencia having been disposed of, an argument based upon it as a deed of conveyance cannot be entertained.

Returning to the case as presented upon the pleadings, we hold that the defendant's answer, though it sets forth some of the facts necessary to be alleged as constituting an equitable defense, is, both in form and substance, defective and insufficient as a pleading under which facts constituting such a defence could be given in evidence, or on which the Court could grant a decree in defendant's favor, and therefore it is unnecessary to pass upon the rulings of the Court below in excluding a portion of the testimony offered in support of the theory of an equitable defense. Such offered testimony, as

well as some of that received, was irrelevant under the issues joined, and the Court committed no error in excluding it.

The evidence established the plaintiff's right to recover the possession of the entire premises described, as against the defendants, and therefore he was entitled to judgment. (*Stark* v. *Barrett*, 15 Cal. 371.)

The judgment is affirmed.