THE CITY OF WATERTOWN vs. ROBINSON and wife.

*November 21, 1883 — February 6, 1884.*

*Service of summons on municipal corporation.*

Service of the summons in an action against a city being required by statute to be made by delivery of a copy thereof to the mayor, a return of the sheriff stating that he delivered a copy of the summons to the chairman of the board of street commissioners, in the absence of the mayor, and that after diligent search he was unable to find the mayor of the city, is *held* not to show a good service. The court cannot presume from such return that the office of mayor was vacant. [Whether if the office of mayor was vacant, service could be made by delivering the summons to any other officer or officers, is not determined.]

ERROR to the Circuit Court for *Jefferson* County.

Action to recover damages for personal injuries to the plaintiff wife caused by the negligence of the defendant city in allowing a derrick, used in repairing a bridge, to fall upon her. The facts connected with the service of the summons and complaint are stated in the opinion. The defendant failed to answer, and, an affidavit of default having been filed, the damages were assessed by a jury and judgment therefor rendered against the city. A writ of error was sued out of this court.

For the plaintiff in error there were briefs signed by *Charles H. Gardner* and *Daniel Hall*, attorneys, and *Geo. W. Bird*, of counsel, and the cause was argued orally by *Mr. Bird* and *Mr. Hall*.

For the defendants in error there was a brief by *Harlow Pease*, their attorney, and the cause was argued orally by *Mr. Pease* and *Wm. F. Vilas*. They cited the charter of the city and the acts amendatory thereof (ch. 233, Laws of 1865; ch. 204, P. & L. Laws of 1871; ch. 46, Laws of 1879),[1] and argued, *inter alia*, that there could not be and were not two legislative bodies in the city, existing contemporaneously and possessing precisely the same powers in all respects save one. The sole object in creating the board of street commissioners was to provide some sort of city government that

[1] Sec. 1, ch. 204, P. & L. Laws of 1871, is as follows: "The senior alderman of each ward of the city of Watertown shall constitute a board of street commissioners, who are hereby authorized, subject to the regulation and control of the common council, to audit and allow accounts against the city and the several wards for current expenses thereof, and when allowed, orders on the treasurer shall issue therefor, and in case of vacancy in the office of mayor, and there is no president of the common council to act, said orders may be signed by the chairman of said board, and the city clerk. The city clerk shall be clerk of said board, and shall keep a record of its proceedings; the mayor may preside at the meetings of said board, and they may elect a chairman, who shall preside in his absence, and a majority of said board may compel the attendance of absent members. Said board shall also have power to approve of the purchase of lots or sites for school houses by the board of education of said city, and shall have all the powers conferred upon the common council, by the city charter, in relation to streets and bridges and sidewalks, subject to the regulation and control aforesaid," etc.

Sec. 2, ch. 46, Laws of 1879, is as follows: "The board of street commissioners of said city and the chairman of said board shall have concurrent power with the mayor and common council of said city in the appointment of inspectors and clerks of election, and shall have all other powers conferred by law upon said mayor and common council, subject to the control of said common council, except the power of levying taxes, which they shall not have in any case whatever."

could not be compelled to levy a tax. When, therefore, that board was in session (as when the service was made) it was the only governing body and for the time being possessed all the corporate authority of the city. In other words, it was *de facto* the common council. And the chairman of that board, while presiding at a regular meeting thereof in the absence of the mayor, has all the powers of the mayor. In fact he *is* the mayor, under the name of chairman. And from the return of the sheriff and the laws above cited the court has a right to assume that there was no nominal mayor of the city. Among the powers of the mayor is " the power of receiving service for the city " ( *Worts v. City of Watertown*, 16 Fed. Rep., 534), and this power, with the others, was conferred upon the chairman of the board of street commissioners by ch. 46, Laws of 1879. A municipal corporation cannot be created with all the functions and franchises known to the law but without any corresponding responsibility. The power of suing and of being sued is essential to the corporate entity, and that power is not divisible. How, then, if the city cannot be *sued*, can it be a plaintiff in error in this court? If the legislature has created a municipal corporation without a mayor, then the common law mode of service must apply. *De Wolf v. Mullett's Adm'r*, 3 Dana (Ky.), 214. See, also, *Alexandria v. Fairfax*, 95 U. S., 774.

The following opinion was filed December 11, 1883:

COLE, C. J. The sole question in this case is, Did the circuit court acquire jurisdiction of the defendant city by the service of the summons and complaint which was made? The sheriff certifies in his return, in effect, that on the 5th day of June, 1882, in his county, he served the summons and complaint on the defendant city, by delivering a copy of the summons and complaint to Henry Bieber, city clerk, and by delivering a copy of said summons and complaint to and

leaving the same with W. D. Stacy, chairman of the board of street commissioners of the defendant city, while said board of street commissioners was in session, and while said W. D. Stacy was presiding as chairman at a regular meeting of said board of street commissioners, in the absence of the mayor of the defendant city. The sheriff further certifies that, after diligent search, he could not find the mayor of the defendant city. The question is, Was this a good service?

The charter of the city provides, when an action shall be commenced against the city, the service of process may be made by leaving a copy thereof with the mayor. Sec. 8, subch. 9, ch. 233, Laws of 1865. By the general statute service is made by delivering a copy of the summons and complaint to the mayor and city clerk. Subd. 3, sec. 2637, R. S. The question whether the Revised Statutes control as to the manner of service is not a material inquiry here, because both the charter and general provision require the service to be made upon the mayor, but no service was made upon that officer, as appears by the return of the sheriff. The principle is too elementary to need discussion, that a court can only acquire jurisdiction of a party — where there is no appearance — by the service of process in the manner prescribed by law. A great number of decisions are cited on the briefs of counsel for the city in support of this position, but the rule is not questioned on the other side.

But the learned counsel for the plaintiffs below insist, in view of the legislation amending the charter of the city (to which they refer, and of which this court takes judicial notice), and of the facts stated in the sheriff's return, that the service must be held sufficient in law. It is said we must assume that there was no mayor upon whom service could be made, and that the office was vacant. Whatever the real fact may be we do not feel authorized in making such an assumption here. It is true, the sheriff returns that he made service upon Stacy, the chairman of the board of street com-

The City of Watertown vs. Robinson and wife.

missioners, while the board was in session, and while Stacy was presiding as chairman, at a regular meeting of such board, "in the absence of the mayor." Further, "that after diligent search" he could not find the mayor of the city. But all this is perfectly consistent with the fact that there was actually a mayor of the city who was temporarily absent, and upon whom the prescribed service might be made after a little delay. Indeed, the natural inference from the facts stated in the return is that there was no vacancy in the office of mayor. This circumstance distinguishes the case from *Worts v. City of Watertown,* 16 Fed. Rep., 534, where it appeared from the marshal's return that the office of mayor was vacant, and that there was no president of the common council, nor presiding officer of the common council, in office. It is obvious, therefore, that it was impossible, in that case, to make the prescribed service upon the mayor. The court, doubtless, thought it would be a strange anomaly in the law that a municipal corporation should exist which was capable of incurring a legal liability, and still was not amenable to judicial process. And the learned counsel for the plaintiffs below, here insist that it is not within the power of the legislature, by any sort of enactment, to create a municipal corporation, with all the powers and franchises incident to such a body, and exempt it from the power of being sued. This certainly raises a very serious question, especially in view of sec. 9 of the bill of rights [Const. of Wis., art. I, sec. 9]; but we are not called upon to decide it at this time; for there is nothing here to show that the proper statutory service upon the mayor might not have been made, and, as it was not, we must hold that the circuit court failed to acquire jurisdiction of the defendant city.

*By the Court.*— The judgment of the circuit court is reversed.

A motion for a rehearing was denied February 6, 1884.