HICKS v. JACKSON *et al., Appellants.*

85  283
154  265
·85  283
87a 256

1. **Parties :** WAIVER. Objections to parties are waived unless made by demurrer or answer.

2. **The conversion** of certain notes and securities held to be within the issues made by the pleadings in this case, and the judgment for their value in favor of a defendant and against a co-defendant, affirmed, and this although the petition was one in ejectment.

*Appeal from Saline Circuit Court.*—HON. W. T. WOOD, Judge.

AFFIRMED.

*Philips & Jackson* for appellant.

(1) The action was one at law and the court erred in ordering Hurt to be brought in as a co-defendant. 2 Jones on Mortgages, 889 ; *McNair v. Picotte*, 33 Mo. 57 ; *Wright v. Cornelius*, 10 Mo. 174 ; *Wolff v. Schaeffer*, 4 Mo. App. 367 ; *C.*, 74 Mo. 154. Although our courts of law and equity are blended, the distinction between law and equity proceedings exists as much as ever in this state. *Myers v. Field*, 37 Mo. 434 ; *Pauly v. Vogle*, 42 Mo. 303 ; *Wynn v. Corey*, 43 Mo. 301. (2) As the issues were purely in law, the court could not render a judgment in favor of

one defendant against his co-defendant, nor could the court in an action at law render two judgments. (3) According to the finding of the court Hurt's act amounted in law to a conversion and Jackson's remedy was in trover. *Buck v. Kent*, 3 Vt. 99; *Coffin v. Anderson*, 4 Blackf. 395; *St. John v. O'Connell*, 7 Post (Ala.) 466. (4) The judgment recovered against appellant is in excess of the sum sued for, and is not only contrary to the prayer of Jackson's answer, but contrary to the issues made in the pleadings. A party cannot even in equity sue for one thing and recover another; much less can he do so at law. *White v. Rush*, 58 Mo. 105; *McNair v. Biddle*, 8 Mo. 257, 267; *Meade v. Knox*, 12 Mo. 287; *Beck v. Ferrara*, 19 Mo. 30; *Buffington v. Railroad*, 64 Mo. 246; Freeman on Judg., sec. 158; *Graham v. Ry. Co.*, 3 Wall. 704; *Duncan v. Fisher*, 18 Mo. 404; *Pond v. Lockwood*, 8 Ala. 669; *Bolles v. Carli*, 12 Minn. 114, 120. Nor can a party have a standing in chancery where he has a plain remedy at law. 1 Hempstead Cir. Ct. 114, 115; *Thompson v. Manly*, 16 Ga. 440, 442; *Coughron v. Swift*, 18 Ill. 414; *Echols v. Hammond*, 30 Miss. 177; *Norwich Ry. v. Story*, 17 Conn. 364; *Janney v. Spedden*, 38 Mo. 395. (5) Nor can a party recover in any case a greater sum than that sued for. *Carr v. Edwards*, 1 Mo. 137; *Armstrong v. St. Louis*, 3 Mo. App. 100, 105–6, and cases cited. Jackson asked judgment for $338.50, surplus proceeds of sale of hotel property, and recovered for $1,200, on account of another matter. (6) Had the answer of Jackson proceeded for the recovery of the amount of said notes, the judgment would be inequitable and bad. If, as the court finds, Hurt held the notes in trust for Jackson and wrongfully turned them over to Hicks, the measure of damages was the value of the notes at the time of the conversion. *Spencer v. Vance*, 57 Mo. 427, 430. The evidence on *all* sides of this case shows that the makers of the notes were insolvent, and had been; and the security given for the notes had been swept away by foreclosure sale under prior mortgage. In such a case the damages

are only nominal. *Fry v. Baxter*, 10 Mo. 302–3 ; *Ingalls v. Lord*, 1 Cow. 240 ; *Metzner v. Graham*, 66 Mo. 660. A trustee, under such circumstances, is only bound for what he realizes. *Hunter v. Hunter*, 50 Mo. 445. (7) The finding and judgment of the court are against the overwhelming weight of the evidence, contrary to Jackson's conduct, acts and admissions, and are most inequitable.

*C. A. Winslow* for respondent.

(1)  The trial court applied the correct rule to the facts of the case.  Perry on Trusts, 306, sec. 245 ; Tiffany & Bul. on Trusts, 112, 113 ; *Van Renselaer v. Morris*, 1 Paige, 13 ; *Benbury v. Benbury*, 2 Dev. & B. Eq. 235. (2) The court below necessarily found as a matter of fact that by the unwarranted disposition of the collaterals to Hicks the amount thereof was lost to Jackson, and this court cannot say that this finding was wrong from anything that conclusively appears in the record. *Julian v. Abbot*, 73 Mo. 580 ; *Ryan v. Gilliam*, 75 Mo. 132 ; *Perry v. Hall*, 75 Mo. 503.   (3) It clearly appearing that Hurt converted the notes by transferring them to Hicks instead of returning them to Jackson, the measure of damages, *prima facie*, is the amount called for on their face, and there is nothing shown by the evidence to change this *prima facie* case ; and the burden was on Hurt. *Menkens v. Menkens*, 23 Mo. 252 ; *Bredow v. Mut. Sav. Inst.*, 28 Mo. 181 ; *State ex rel. v. Berning*, 74 Mo. 87.   (4) It is too late to object to the absence of a reply, even if the record fails to show one.   *Henslee v. Cannefax*, 49 Mo. 295 ; *Howell v. Reynolds Co.*, 51 Mo. 154 ; *Insurance Co. v. Harlan*, 72 Mo. 202.   (5) The trial court had jurisdiction of the subject matter and the parties.  R. S., sec. 3465.   All the facts are set out in the pleadings and general relief is asked.   38 Mo. 55 ; 37 Mo. 361 ; 48 Mo. 512. The statute authorized a judgment between the parties. R. S., sec. 3673.  None of the objections as to the parties were made in the court below, either by demurrer, answer

or motion ; and they cannot be made for the first time in this court, even if they were meritorious, which is not the case.   R. S., sec. 3774, and notes.

RAY, J.—The facts, presented by this record, are so involved and complicated, that it is quite difficult to summarize them, or to determine, or state with accuracy, their precise import and meaning.   At the beginning, however, the case was simple enough ; but in the progress of the cause, by reason of the introduction of a new party as a co-defendant, and the pleadings and issues between them, as well as those between the original plaintiff and defendant, the case became, as above suggested, quite involved and complicated.   The action, as originally commenced by plaintiff, Hicks, against defendant, Jackson, was in the nature of ejectment, in the usual form, for the recovery of the possession of "the undivided one-half of the west parts of lots six and seven in block seven, in the town of Marshall, Saline county."

The second amended answer of defendant, Jackson (upon which, and the reply and answer thereto, the case was finally tried), contained, among other things, an equitable defence and cross-bill, making appellant, Hurt, a party defendant ; and upon the trial of the cause and the hearing of the cross-bill and Hurt's answer thereto, judgment was rendered in favor of plaintiff, Hicks, against defendant, Jackson, for the recovery of the property sued for ; and, also, a judgment in favor of defendant, Jackson, against defendant, Hurt, for the sum of $1,224.50.   From this judgment against him defendant, Jackson, took no appeal ; nor did the plaintiff, Hicks, appeal from any part of the judgment in the cause, so that the real contest now before us, is between the defendants, Jackson and Hurt, on said cross-bill, and the answer thereto and issues thereunder.

To begin, it appears that in March, 1873, one Allen Jackson, being the owner in fee of said lots six and seven, borrowed of said Ossimus Hurt $2,500, for which he gave

his note and deed of trust upon the property to secure its payment. Upon the property so encumbered by said deed of trust, there were, it seems, two separate and distinct buildings and improvements, upon different and distinct parts thereof; one of which was known as the "Jackson Hotel property," and the other, as the "Jackson Livery Stable property." Afterwards, in September, 1877, default being made by said Allen Jackson in the payment of said note, the said Hurt caused the property to be advertised for sale under said trust deed. At the sale so advertised it appears that that part of the property known as the "hotel property" was first sold, and that said Hurt became the purchaser at the sum of $2,001, and immediately thereafter that part known as the "livery stable property," was, also, sold, and that the plaintiff, Hicks, became the purchaser thereof at and for the sum of $1,700.25, and that deeds therefor were accordingly made to the respective purchasers; it is under the deed so made that Hicks, the plaintiff, claims the property sued for.

It also appears that between the date of said deed of trust in March, 1873, and the sales thereunder, in September, 1877, a great number of complicated transactions, conveyances, sales and agreements were had and made by and between various parties, affecting the title to said property, covered by said deed of trust, and especially that part of it involved in this suit, to many of which the defendant, Jackson, was a party, to others of which one Blackburn, Day and Nickell were parties, and to some of which the defendant, Hurt, was also a party. The first of the transactions, above referred to, was that by which the defendant, Wm. Jackson, by deeds from Allen Jackson, became the owner, subject to said deed of trust, of all the property covered thereby. Subsequently thereto, and after a number of intermediate transactions, the defendant, Wm. Jackson, by deed of general warranty, sold and conveyed to said Wm. A. Nickell an undivided one-half interest in the said "livery stable

property," for and at the price of $1,700.25. A part of the proceeds of this sale, it seems, by some arrangement between Day and Nickell and the defendants, Hurt and Jackson, was paid and secured to said Hurt, at his instance, in the following manner, and to the following extent: Said Day gave said Hurt a check on the Marshall bank for $600, which was immediately cashed, and said Day and Nickell executed to said Hurt their note for $250, and said Nickell executed his note to Hurt for $850.25, and to secure the same said Nickell also executed to said Hurt his deed of trust, or mortgage, with power of sale on said undivided half interest in said livery stable property.

It is alleged and claimed by defendant, Jackson, in his said amended answer, that defendant, Hurt, accepted and received the proceeds of this sale from Jackson to Nickell, of said half interest in said livery property, amounting to the sum of $1,700.25, as a payment and a credit, to that extent, on the original note and trust deed, from Allen Jackson to said Hurt, subject to which said Wm. Jackson then owned the property covered thereby. The defendant, Hurt, in his answer, on the contrary, denies that he received the same as payment on said Allen Jackson's note and deed of trust, but that he received and held said notes and securities only as collateral security therefor. Defendant, Jackson, further claimed that the Allen Jackson note and trust deed were fully paid and extinguished by the payment of said $1,700.25, and the sale of the said hotel property to Hurt, under said deed of trust for $2,001, and that the subsequent sale to Hicks, the plaintiff, of the livery stable property was without authority of law, wrongful and void, and consequently passed no title to said Hicks. This, the defendant, Hurt, and the plaintiff, Hicks, severally deny. The defendant, Jackson, in his answer, by which said Hurt was brought in as a party defendant, also charges that Hurt subsequently *converted said securities*, so received from him (through said Day and Nickell), *to his*

*own use, and realized the full benefit thereof.* Defendant, Jackson, further charges that defendant, Hurt, and plaintiff, Hicks, before said purchase by Hicks, entered into an agreement, by which said Hicks was to bid said sum of $1,700.25, and pay the same to Hurt for said livery stable property, and that Hurt was then to turn over to Hicks the said note and deed of trust of Nickell for $850, and said note of Nickell and Day for $250, and that Hurt, in pursuance of said agreement, did turn over and deliver said notes and deeds of trust to Hicks accordingly, which said agreement and transaction between said Hurt and Hicks, defendant, Jackson, charges to be fraudulent and damaging as to him.

The answer of Jackson prays that Hurt may be made a party defendant ; that the court make a decree quieting his possession ; that Hurt pay him the money due him from the sale of said hotel property, for the cancellation of the deed from the trustee to Hicks, "and, also, for such other and further relief as he may be entitled to."

Plaintiff replied to this answer of defendant, Jackson, and among other things denied that Hurt had converted the notes and securities received from Nickell and Day to his own use, or realized any benefit that should be applied on the Allen Jackson note and trust deed ; he denies making any such agreement with defendant, Hurt, at or before the sale at which he purchased; but admits that he holds the notes and securities, and denies that he bid for said property and took the notes and trust deeds under any such agreement with Hurt, and claims to have bought in good faith and for value, etc.

Hurt's answer denies generally, and then admits the receipt of the Day check for $600, but denies that it was given pursuant to the agreement alleged ; admits that Day and Nickell gave him the note for $250, and that Nickell gave his note and deed of trust for $850.25, but denies that they were given and received in payment of $1,700 on said Allen Jackson's note and trust deed to

him, and also denied that he had since *converted* said securities to his own use, or realized the benefit thereof; or that said $1,700 was a payment *pro tanto* on said Allen Jackson's note and trust deed. The answer of Hurt then charges, in substance, that he accepted and held the notes and securities from Day and Nickell, not as a payment on the Allen Jackson note and trust deed to him, but only as collateral thereto, and being anxious to protect said Nickell and carry out his agreement with him in that behalf, he stipulated with Hicks during the progress of the bidding on said livery stable property, that in the event Hicks purchased it, he would take said notes and make Nickell a deed on his paying said notes, to which Hicks consented, and thereupon he turned over said papers and notes of Nickell and Day to plaintiff, Hicks, of all which facts he charges that defendant, Jackson, had notice and consented thereto; that said notes and securities became worthless and valueless by reason of the sale of Nickell's half interest in the livery stable property, under the Allen Jackson deed of trust, but admits that he turned them over to Hicks after said sale.

The foregoing summary of the facts, pleadings and issues, will present the case appearing in the record with sufficient accuracy for the determination of the real controversy now before us. It appears, generally, from this summary, that William Jackson acquired title to the lots embraced in the Allen Jackson deed of trust, subject to the lien in favor of Hurt for the note thereby secured; that there was a hotel on one part of the lots and a livery stable on another part; that on March 18, 1876, the whole property was sold under the above deed of trust, and William Jackson became the purchaser, but failed to comply with his bid and the sale was abandoned; that Hurt then agreed with Jackson to give him further time, perhaps a year, in consideration of a bonus, which Jackson says was fifteen per cent., and Hurt says was $350, at least, on a note then drawing ten per cent. compound interest; that Jackson put into his hands as collateral the Black-

burn note for $2,800, and the Blackburn-Colbert note for $1,750, which last was a solvent note given for money loaned; that prior to this arrangement, and after Jackson's purchase, he sold and conveyed the livery stable to Blackburn in consideration of a farm and the $2,800 note just mentioned, and took a deed of trust on the stable to secure the note, which he subsequently foreclosed and became the purchaser of the title; that Blackburn, after his purchase, sold and exchanged certain interests to Day and Nickell, whereby they became indebted to him, and such transactions were subsequently had between the parties, that Nickell and Jackson became possessed of a half interest each in the stable and stock, and owned and were conducting the same in partnership; that, while matters were in this condition, Jackson, Blackburn, Day and Nickell, who were all bound to each other in connection with the stable property, sought a settlement with Hurt, where y the half interest held by Nickell should be released from the Allen Jackson deed of trust, and the other parties released from their obligations on account of that interest; that these negotiations resulted in an agreement, which was executed July 15, 1876, whereby (as claimed by Jackson) Hurt agreed to accept a certain check drawn by Day for $600, the note of Nickell for $856.25, secured by a deed of trust on his half of the stable and stock, and the note of Day for $256.25, signed by Nickell and secured by a deed of trust on other real estate, as a payment of so much money by Jackson on the note secured by the Allen Jackson deed of trust, and thereupon a like credit was to be entered on the Blackburn-Colbert note as a payment by Blackburn, the half interest of Nickell was to be released from the old deed of trust and the new securities accepted in its place, and Jackson was to execute a deed to Nickell for a half interest in the stable realty; that the note and deeds of trust, and the deed from Jackson, were all executed and delivered in accordance with the agreement, the credits were entered on the Blackburn-Colbert note, and all parts

of the agreement carried out, except the entry of the credits on the old note by Hurt; that the check and new notes and deeds of trust were all taken in Hurt's name by his direction; that, September 15, 1877, Hurt caused all the property covered by the old deed of trust to be sold; that the amount due on his note was then about $3,570; that he sold the hotel property first for $2,001, leaving about $1,489 still unsatisfied; that he then put up the entire interest in the livery stable realty, and Hicks purchased it for $1,700; that the money received from Hicks was paid to Hurt to the amount of one hundred and twelve dollars in excess of his debt, and that Hurt after the sale transferred the Nickell and Day notes to Hicks.

There was evidence tending to show that Hurt had an agreement with Hicks, made pending the sale, by which Nickell was to be protected, the nature of which does not fully appear; but there was no evidence that this agreement was communicated to Jackson, or the other parties interested, except Nickell, who so far agreed to it as to say that he did not care to whom he paid his money so he got the title to his property. There was, also, evidence tending to show that Hurt agreed with Nickell, before he purchased the property, that he would release the old deeds of trust on his interest, and an assurance that he only put up the whole property because he was advised that it could not be sold in any other way. Hurt, however, denies the agreement to accept the Nickell and Day note and the check as a payment on his note, and the agreement to release the Nickell interest, unless he received the money on the notes, and swears that he only agreed to receive the notes and deeds of trust as collateral. All the parties to the suit testified as witnesses in the cause, and on the vital points of the case there was much direct conflict between them. Other witnesses were also examined, and such of the testimony as we deem material will be noticed in the progress of this opinion.

At the close of the testimony, the court, after find-

ing for the plaintiff, as against defendant, Jackson, and rendering a judgment against him, for the possession of the property sued for, made the following finding as between the defendants, Jackson and Hurt: "That the defendant, Ossimus Hurt, has in his hands one hundred and twelve dollars, being part of the overplus over and above debt and costs arising from the sale of the said premises on the 15th day of September, 1877, by E. W. Jenkins, trustee, under the deed of trust from Allen Jackson to said Ossimus Hurt, dated the 13th day of March, 1873, which sum was retained by said Hurt, by reason of an error, in calculation of interest and credits on the note secured by said deed of trust. And the court further finds that the defendant, Hurt, had in his hands at the time of said sale notes as follows: One of Stanley H. Day for $256.25, and another of William A. Nickell and Stanley H. Day for $856.25, dated July 15, 1876, and both payable to said Hurt, and secured by deeds of trust from said Day and Nickell to said Hurt; and that said trust sale having more than paid said trust debt and costs, said Hurt, from and after the payment and satisfaction of said trust debt, held said notes of said Nickell and Day, and the deeds of trust securing the same, as trustee in trust for the benefit of said William Jackson; and so holding said notes and trust deeds, without authority from said Jackson so assigned, transferred and disposed of the same to the plaintiff, Hicks, that the same cannot be reached by this court, and the amount thereof is lost to the said William Jackson, and that the said Hurt is, in equity, bound to make good to said Jackson the amount of said notes without interest."

On this finding, the court entered a judgment against Hurt in favor of Jackson for $1,224.50, being the amount of the overplus and the face of the two notes, and divided the costs. From this judgment the defendant, Hurt, after an unsuccessful motion for a new hearing, brings the case here by appeal.

It is insisted for appellant, among other things, that

if defendant Jackson's allegations as to the payment and satisfaction in full of the Allen Jackson note and deed of trust were true, then there was no necessity of bringing Hurt into the case as a co-defendant, since his defence, in that case, was perfect and available at law. Appellant admits the equity rule, that, where two defendants are in court as necessary parties to a complete determination of plaintiff's cause of action, the court, being thus possessed of the cause, may proceed to adjust the equities and conflicting claims and rights, as between co-defendants, even to giving judgment in favor of one defendant against the other, but he claims we have no precedent, or authority, for a case like this, where the whole matter at issue between plaintiff and defendant can be completely determined without the presence of a third party to stop the suit, "*in limine,*" at the instance of defendant, to bring in a third party in order that he may recover an independant judgment against the stranger. Under the code practice, however, it must be remembered that it is now the practice, as provided by section 3673, that "judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants, and it may determine the ultimate rights of the parties on each side, as between themselves, and it may grant to the defendant any affirmative relief to which he may be entitled." Section 3633 also enacts that, "whenever such interlocutory judgment shall be rendered for plaintiff, the damages or other relief shall not be other or greater than that which he shall have demanded in the petition, as originally filed, and served on defendant ; *but in any other case the court may grant him any relief, consistent with the case, made by the plaintiff and embraced within the issues.*"

In a case like this, it will not be pretended that the defendant, who shows himself entitled to affirmative relief against his co-defendant, is not to be treated and regarded as against him as a plaintiff, to that extent and for that purpose. The record shows that when defendant,

Hurt, was brought in as a co-defendant by the original defendant, by way of an equitable defence and cross-bill, that Hurt made no objection that there was any defect of parties, plaintiff or defendant, either by demurrer, or by way of answer, and in such event, section 3519 provides that, "if no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same," etc. It is too late thereafter to make that objection, even if it was true, for the first time in this court.

It is, also, urged by appellant that the finding and judgment of the trial court were inconsistent with and unauthorized by the pleadings in the cause; that the theory of Jackson's defence was, that after the turning over to Hurt of the notes and securities mentioned, and the sale of the hotel property under the trust deed, the Allen Jackson note and deed of trust were fully paid and satisfied, and that the subsequent sale of the livery property was, therefore, unauthorized and void and passed no title to Hicks, the purchaser at such sale, and the plaintiff in this suit. It may be conceded that such seems to have been the primary and leading idea and aim of Jackson's answer and cross-bill, but it also appears that said answer and cross-bill further charges that while said sale, as to the livery property, was wrongful and fraudulent, it also expressly charged, in substance, that said Hurt thereby and thereafter *converted* said *securities* so received from Day and Nickell, *to his own use* and *realized the full benefit thereof*. This charge is distinctly made in Jackson's answer, and is as distinctly denied, both in the reply of the plaintiff, Hicks, and in the answer of Hurt, the co-defendant. This charge, then, was clearly within the pleadings, and the issues made thereby, and there was ample evidence, as the record shows, tending to prove and establish these allegations of the pleadings and the issues thereunder. In this connection the record further shows that while the answer of Jackson prayed that Hurt might be made a party defend-

ant, and that the court might make a decree quieting defendant's possession, and that Hurt should pay to Jackson the money due him for the sale of the hotel property, and for the cancellation of the trustee's deed to Hicks, *it also prayed for such other and further relief as he might be entitled to.* There is, therefore, no merit in this objection of the appellant.

It is further insisted by appellant that the finding and judgment of the circuit court is contrary to the weight of evidence; is against all the equities of the case, and in contradiction of Jackson's conduct, acts and admissions; that Hurt certainly had not wronged the defendant, Jackson, as he had simply loaned Allen Jackson $2,500, and taken a deed of trust on the property in question before the defendant became in any way interested therein. It may be conceded that if Hurt had simply stood on his prior right, under his deed of trust from Allen Jackson, the defendant, Jackson, nor no one else, would have had any cause to complain of him. But that is not this case. He was not content, as the record shows, to rely on his prior security, but intermeddled with and mixed himself up with the subsequent rights of third parties to said property in such a way as to impose on him the duty and obligation of dealing fairly and in the utmost good faith with those acquiring rights subsequent to his.

It is also contended for Hurt that the sale to Hicks, under the Allen Jackson deed of trust, carried Nickell's half interest in the livery property, and thus produced a failure of title, as between Jackson and Nickell, the result of which was a failure of the consideration of the Nickell and Day notes and securities, which destroyed their value as collateral security. It may be conceded that such would have been the result if nothing more had appeared and Jackson would, in that event, have had no cause of complaint. But, it is insisted for Jackson, that the record shows Hurt had so intermeddled with the trust property, and so complicated himself by agreements with the various parties interested in it, that he was bound in equity

and good conscience to enter the Allen Jackson deed of trust satisfied, at least as to Nickell's half interest in the livery property and to refrain from its sale thereunder, and that Hurt, himself, by wrongfully forcing the sale of Nickell's half interest in said livery property, contrary to his agreement with him, thereby destroyed the value of the securities he thus held as collateral to the Allen Jackson deed of trust, to the damage and injury of defendant, Jackson, to whom, the evidence shows, they justly belonged; that his conduct in that behalf was a wrong and a fraud upon said Jackson's half interest in the livery property, was, of itself, of sufficient value, to have paid the balance due on the Allen Jackson note and deed of trust, after the said sale of the hotel property to Hurt. If that be so, it would have been equitable and just on the part of Hurt, under the facts of the case, to have first subjected it to sale before resorting to the Nickell half interest. If that had been done, it is clear that Jackson's notes and securities would have retained their value and availability to said Jackson. It thus appears that Hurt, by his conduct in the premises, protected Nickell at the sacrifice of Jackson, when he might have saved them both, without having endangered his own security. If Hurt, as he claims, held these securities which belonged to Jackson only as collateral, then he had no right, after his Allen Jackson debt was paid, by the sale of the property to Hicks, as he did, and such a disposition of them was wrongful, and of itself amounted to a conversion of them to his own use.

From the finding and judgment above set forth it will be seen that, as to Hicks, the trial court treated the sale as sufficient to pass the title to the property sold, but whether on the ground of estoppel, or innocent purchase, does not appear (nor is it material, because that part of the judgment is not questioned here); but in dealing with Hurt, the court treated him as a trustee, and held him responsible for the face value of the notes and securities so held, on the ground that by his intermeddling with the

trust property, and his dealings and agreements with the parties interested in it, they became entirely lost to Jackson. Under the facts and circumstances developed in the record we are not prepared to say that the circuit court erred in its said rulings. The facts were all before the court, the witnesses testifying, especially Hurt and Jackson, in direct opposition to each other, were present to be seen, as well as heard, and in all such cases it is the habit and custom of this court not to interfere with the finding and judgment in the trial court, unless they are manifestly erroneous. That we cannot say of this case, and the judgment of the circuit court is, therefore, affirmed. All concur.