DECEMBER TERM, 1888.

GREAT WEST MIN. CO. v. WOODMAS OF ALSTON MIN. CO. ET AL.

1. WRITS — SERVICE ON CORPORATIONS.— Under Code of Civil Procedure, 1883, section 40, providing that, in a suit against a corporation, service shall be made on the president, cashier, treasurer or general agent, a suit against a mining company is not properly commenced by service on the foreman of one of its mines, who is under the orders of and makes his reports to its general agent.

2. JUDGMENT — BY DEFAULT — WANT OF SERVICE.— A judgment by default obtained without proper service, and on an unauthorized appearance, is an absolute nullity.

3. ATTACHMENT — OF REAL ESTATE — PERSONAL SERVICE.— Code of Civil Procedure, section 101, providing that real property shall be attached by filing a copy of the writ, together with a description of the property attached, with the recorder of the county, does not authorize a judgment and condemnation of the property without personal service on the defendant.

4. ATTORNEY AND CLIENT — AUTHORITY OF ATTORNEY.— The recital in the record that an attorney appeared for defendant is only *prima facie* evidence of said attorney's authority to appear, and the fact that he was wholly unauthorized to appear may be shown in a direct proceeding.

5. NOTICE — BY OFFICERS OF CORPORATION — EVIDENCE.— Evidence that at the time the attachment suits were commenced defendant's general agent telegraphed to its foreman at the mines the amounts of the company's debts to the creditors, who afterwards joined in one suit, and that the foreman afterwards met the president and secretary, and talked to them about both suits, does not affirmatively show that defendant's officers knew of the judgments or of the sale of real estate thereunder, personalty to a large amount having also been attached, and all the officers who were in the state, and had anything to do with the management of its business there, swearing positively that they knew nothing of such judgments or sales.

6. ESTOPPEL — IN PAIS.— Mere silence, not occasioning detriment to the other party, does not work an estoppel *in pais*.

7. EQUITY — SUIT TO SET ASIDE SHERIFF'S DEEDS — LACHES.— One who was not informed of a false return of service on him, and of

an unauthorized appearance for him, in time to move to correct these in the court where the suits were pending, nor knew of the sale of his realty till the time for redemption had expired, but as soon as he was informed of the fraud was diligent in employing counsel and bringing suit, is not chargeable with laches.

8. JUDGMENT BY DEFAULT — EQUITABLE RELIEF.— Though a judgment taken by default, without service, was founded on a just and due debt, yet a showing that the defendant's land was levied on and sold, and the time for redemption expired without notice to him, states a case for equitable relief against innocent purchasers at the sheriff's sale.

9. WRITS — RETURN OF SHERIFF — IMPEACHMENT.— The recital of a sheriff's return of summons that the person served was the agent of defendant company may be impeached.

10. EQUITY — ACTION TO SET ASIDE SHERIFF'S DEEDS — PARTIES.— In an action to set aside sheriff's deeds, the plaintiffs in the original suits, who purchased the premises at the sheriff's sale, and quitclaimed to the present claimants, having no interest in the premises, are not indispensable parties, and their absence, not having been objected to below, is waived, under the provisions of Code of Civil Procedure, sections 55, 59, 60, that a defect or misjoinder of parties plaintiff is a ground for demurrer or objection by answer, as the case may be, and that, if no objection be so taken, it is waived.

*Appeal from District Court of El Paso County.*

Messrs. L. S. DIXON, H. B. JOHNSON and D. E. PARKS, for appellant.

Mr. HUGH BUTLER, for appellees.

MR. JUSTICE GERRY delivered the opinion of the court.

The original complaint is not set out in the record, nor is reference made to the same in the abstract or argument of counsel. The amended complaint is a suit against the Woodmas of Alston Mining Company and Alfred H. and Randall W. Wilson. It was begun in the district court of Park county, but, by consent of parties, heard before the district court of said district in El Paso county. It is shown by the pleadings and proofs that the plaintiff is a domestic corporation, organized under

the laws of this state, and that in January, 1883, it was the owner of certain mining claims situate in the county of Park; that, while it was such owner, one Perkins instituted- a suit against it by attachment, and about the same time a second suit was instituted against it by one Moynahan, both for the recovery of claims due from the said plaintiff to Perkins and Moynahan. Perkins was the assignee for a number of persons who were the creditors of the appellant, they assigning their claims to him for convenience and to enable him to bring one suit for the recovery of the aggregate of all the claims. One C. S. Purmort, whom it is claimed by appellees was the general agent of the company, was one of the persons who assigned his claim to the said Perkins. The other suit was by Moynahan on his own account. Both suits were begun by attachments, and jurisdiction, so far as the property of the company was concerned, was acquired by the issue and levy of the proper writs of attachment. The writs were served upon the said Purmort, who was at that time acting as foreman on the mines owned by the appellant. The general agent of the company at that time was one A. W. Kellogg, and Purmort received his appointment as foreman from Kellogg. When the sheriff served these writs on the said Purmort he then stated that he was not the agent of the company, but simply its foreman, and in each case the sheriff made return that he had executed the writs by serving the same upon Purmort, the foreman of the defendant company. Afterwards, upon leave of court obtained for this purpose, the said sheriff amended his return, showing that he had served the process upon Purmort as the agent of the defendant company.

The amended return on the writ of attachment in the Perkins suit showed that the return was upon said Purmort as " the resident agent of the company," and in the other writs and summons the amended return showed that the service was had upon the same person as " the

general agent of the company." In the suit of Perkins there was no appearance of the defendant, and judgment was entered by default. In the Moynahan suit, one Gwynn assumed to appear as attorney for the defendant company, and entered the appearance of said company. A sort of trial was had, and judgment rendered in favor of Moynahan for the amount sued for in the complaint. Subsequently, special executions were issued, and the property was levied upon and sold for a sum of money sufficient to pay both judgments and costs. At such sale, Gwynn, representing Perkins and Moynahan, and acting for himself, became the purchaser, receiving certificates of purchase. Nine months afterwards, the appellant having failed to redeem, sheriff's deeds were issued to Gwynn and Moynahan. The property was sold by the sheriff some time in 1883, and the nine months allowed for redemption expired early in 1884. After receiving the sheriff's deeds, Gwynn and Moynahan entered into possession of the property as owners, and continued in possession until the month of December, 1884, at which time they sold and conveyed the property to appellees Alfred H. and Randall W. Wilson. During the year 1885 the Woodmas of Alston Company was formed by the appellees, and a conveyance was made by the Wilsons to the said company. The mining property described in the complaint, and the subject-matter of this suit, has been worked by the appellees, and a large amount of ore extracted therefrom, and they have derived in profits an amount largely in excess of the amount of the judgments in question.

It is not necessary to analyze the pleadings in this case, or review, to any considerable extent, the evidence. It is clearly apparent that the only service of summons had was upon the said Purmort; that he was not the general agent,— he was simply the foreman, and acting in behalf of the general agent, Kellogg; that the plaintiff in the attachment suits, and the sheriff who made the service,

knew that he was simply foreman, and the sheriff in the first instance so returned; that the said Purmort concealed or neglected to inform the company of the fact of such service, and that the said Gwynn, when he entered the appearance of the defendant company in the Moynahan suit, had no authority whatever for this purpose; and that he neglected or refused to inform the company of the fact of such suit, and that the company had no actual notice that any suit had been begun, that there had been any sales made under execution, or that there had ever been a conveyance of the property by the sheriff.

There was an attempt to obtain jurisdiction by service of process upon an agent of the corporation. In cases of domestic corporations the service must be upon a general agent. Code Civil Proc. 1883, § 40. There is a wide distinction between a general and a special or particular agent,— a distinction not unfounded or useless, and one which solves many cases. A special agency exists where there is a delegation of authority to do a single act, and a general agency exists where there is a delegation to do all acts connected with a particular trade, business or employment. Story, Ag. § 17. Numerous other authorities recognize this same distinction so clearly laid down by Mr. Story. *Beals v. Allen,* 18 Johns. 363; *Martin v. Farnsworth,* 49 N. Y. 555; *Merserau v. Insurance Co.* 66 N. Y. 274; *Railroad Co. v. Reisner,* 18 Kan. 458; *Cruzan v. Smith,* 41 Ind. 288. While the powers of a general agent may be liberally construed according to the necessities of the occasion and the scope of his business and employment, those of a special agent are limited by the terms in which they are conferred, and he takes nothing by implication. C. S. Purmort, the person upon whom service of process was had in this case, could in no sense of the term be called a general agent. As shown by the evidence, one A. W. Kellogg was the general agent. Purmort was employed by him as foreman of the mine. His duties were to oversee the laborers on

the mine, keep their time, see that work was done in mine fashion, perform the duties of shift boss, and in the absence of the general agent, Kellogg, he sold ore and bought supplies for the men, and paid their wages, reporting his acts and doings to Kellogg. He made no reports, and had no communications with the company direct. He kept no books, and had no office, nor was he held out by the company as an agent, nor did he represent himself as such. On the contrary, when the sheriff served the writ and summons upon him, he notified the sheriff that he was not an agent of the company, but simply foreman, and the sheriff at that time so understood, and made return of process accordingly. His duties and powers were limited, and not connected in any manner with the general management and supervision of the affairs of the company.

To bind a corporation the service of process must be upon the identical agent provided by the statute. *Chambers v. Manufactory,* 16 Kan. 270; *Kennedy v. Society,* 38 Cal. 151; *Watertown v. Robinson,* 59 Wis. 513; *Aiken v. Mining Co.* 6 Cal. 187; *O'Brien v. Shaw,* 10 Cal. 343; *Reddington v. Mining Co.* 19 Hun, 405; *Cherry v. Railroad Co.* 59 Ga. 446; *Railroad Co. v. Miller,* 87 Ill. 45.

In *Railway Co. v. Hunt,* 39 Mich. 469, the court, in speaking of the return of service upon an agent, said: "But what sort of an agent? Was he agent to buy wood, or to employ a switchman, or to keep cattle off the track, or what was his agency? Every servant of the road is in a sense an agent. There must be something more definite than the mere designation of a man as 'agent' before a court can say that his relation to the corporation was such as to make him its representative for the purpose of receiving services of process for it. The terms 'general or special agent' are very indefinite, but employed as they are here, in association with terms designating the principal officers of the corporation, they evidently intend agents who either gener-

ally or in respect to some particular department of the corporate business have a controlling authority, either general or special. They do not mean every man who is intrusted with a commission or an employment."

In *Reddington v. Mining Co.* the court said: "It is quite clear that the legislature attached importance to the term 'managing agent,' and employed it to distinguish a person who should be invested with general power, involving the exercise of judgment and discretion, from an ordinary agent or employee who acted in an inferior capacity, and under the direction and control of superior authority, both in regard to the extent of the work and the manner of executing the same. The distinction thus attempted to be drawn we deem reasonable, and in harmony with the obvious purpose of the statute in regard to the service of process upon a foreign corporation."

In *Transportation Co. v. Whittaker*, 16 Wis. 233, the question presented was whether there had been a sufficient service. The summons had been served upon the captain of a steamboat belonging to the company while employed in transacting its business on the Mississippi river, within the boundaries of the state, and the court held that he was not a managing agent, within the meaning of the statute. Said the court: "The statute relates to an agent having a general supervision over the affairs of the corporation."

The service of process in this case was not made upon a general agent of the defendant company, and such service could not bind the company. This conclusion renders necessary the investigation of the question whether the appearance of the appellant company entered by the attorney Gwynn in the Moynahan suit would bind it. He was not employed for this purpose by the company direct, or through its authorized agents, nor did he inform the company of his acts in the premises. His appearance was wholly unauthorized, and, in

a proceeding directly attacking the judgment, this can be shown. The record shows that the defendant company appeared by its attorney, and this is conclusive proof that the attorney so appeared, but only *prima facie* evidence of the authority of the attorney so to act. It would not only be harsh, but absurd, to hold that a person could be deprived of his property without notice, and upon the mere entry of an appearance by an attorney acting wholly without authority delegated for this purpose. Attorneys are officers of the court, and their authority to appear in any particular case will not be questioned by the court. Their appearance is *prima facie* evidence of authority to act; but when such authority is denied or properly put in issue, it is competent to rebut by proofs any presumptions which may arise from such acts. If the attorney was without authority, then his acts could bind no one. *Shelton v. Tiffin*, 6 How. 163; *Shumway v. Stillman*, 6 Wend. 447; *Welch v. Sykes*, 3 Gilman, 197; *Hall v. Williams*, 6 Pick. 232; *Sheriff v. Smith*, 47 How. Pr. 470; *Thompson v. Emmert*, 15 Ill. 415; *Chapman v. Austin*, 44 Tex. 133; *Napton v. Leaton*, 71 Mo. 358.

The proceedings in this case are a direct attack upon the judgment, and it is useless to discuss the question so ably presented by counsel, whether a judgment can be attacked collaterally for want of due service. It was competent to show that the service of the writ and summons was not made upon a general agent of the defendant, and that the entry of appearance by the attorney was unauthorized, and that no notice was given to the parties whose right was sought to be affected by such entry. It follows as a logical result of the propositions before discussed that a judgment rendered without service, or upon the unauthorized appearance of an attorney, is (whenever it is made to appear by proper proceedings instituted for this purpose) void, and that all sales, or other proceedings had thereunder, are as to all persons,

irrespective of notice or *bona fides,* absolute nullities. *Shelton v. Tiffin,* 6 How. 163. A different rule might prevail if a judgment is only attacked on the ground of fraud, and rights had been acquired on execution sales without notice of such fraud. But absence of legal service or authorized appearance is jurisdictional. Without jurisdiction, no judgment whatever will be entered, nor rights acquired thereunder.

The mere levy of an attachment did not give the court jurisdiction to determine the question of indebtedness and condemn the attached property to pay the same. The remedy by attachment is purely statutory. It has no existence without the statute. It has an individuality entirely foreign to the common law, and, being in derogation of common right, must be strictly construed. An attachment of real estate and notice thereof is made by filing a copy of the writ, together with a description of the property, with the recorder of the county; and by serving a copy of the writ on the defendant. Civil Code 1883, § 101. When service is other than personal, or personal service without the state, the statute provides when this shall be complete. Id. §§ 44, 45. The statute (Id. § 49) further provides that, from the time of the service of summons in a civil action, the court shall be deemed to have acquired jurisdiction, and to have control of all subsequent proceedings. A voluntary appearance of the defendant shall be equivalent to personal service upon him. Where a defendant resides in this state, and there is no question but that he can be personally served, the service is complete when a copy of the writ is served upon him, and the property levied upon. Then, and not until then, does the court acquire jurisdiction to finally hear and determine the same. This is a construction that this provision of the code has ever received. *Kendall v. Washburn,* 14 How. Pr. 380; *Moore v. Thayer,* 6 How. Pr. 47; *In re Griswold,* 13 Barb. 412; *Kelly v. Countryman,* 15 Hun, 97.

This provision of the statute is simply a declaration of that principle always maintained by the courts, that a person cannot be prejudiced or his rights of person or property affected without notice, either actual or constructive. So jealous have the people been of the maintenance of this principle that it has been engrafted into both the federal and the state constitutions, and that constitutional requirement of due process of law extends to all proceedings, judicial and administrative. *Stuart v. Palmer*, 74 N. Y. 183; *Clark v. Mitchell*, 69 Mo. 627. The courts have uniformly held that this requirement demands that there shall be notice and hearing before condemnation. Any proceeding which violates these principles is not "due process of law," and is not according "to the law of the land." Where the property of a citizen is taken and condemned without notice to him, it is entirely immaterial whether it be a special or general judgment; the fundamental wrong in such case being that his property is taken and conveyed to some other person without his knowledge.

The abstract in this case was very imperfect, and the record exceedingly voluminous, and the court regrets that no argument was filed by counsel for the appellees; for in cases of this magnitude the court is entitled to all the light which the experience and research of counsel can furnish.

Judgment reversed and cause remanded.

#### ON REHEARING.

MR. JUSTICE HAYT delivered the opinion of the court.

In the opinion of this court in this case filed upon the 30th day of November, 1888, Mr. Justice GERRY concludes by saying: "The abstract in this case is very imperfect, and the record exceedingly voluminous, and the court regrets that no argument was filed by counsel for the appellees; for in cases of this magnitude the court is enti-

tled to all the light which the experience and research of counsel can furnish." After that opinion was filed, and the case reversed, counsel for appellees came before the court, excusing his failure to file an argument, and asking that a rehearing be granted; and, the appellant having filed a motion asking that this court enter a final decree herein, by consent of counsel the rehearing was granted. Briefs were filed, and an oral argument heard, and the entire matter submitted anew to the consideration of the court.

In the former opinion it was held — *First*, that service of process in this case was not made upon a general agent of the defendant company, and that the service made did not bind the company; *second*, that the appearance of Gwynn for defendant was wholly unauthorized, and the company was not bound thereby; *third*, that the mere levy of the attachment did not give the court jurisdiction to determine the question of indebtedness and condemn the attached property to the payment of the same.

After again carefully considering these questions, we see no reason to change the views heretofore expressed. Purmort, upon whom service was made for the company, was directly interested in the success of the plaintiff's action, having assigned to the plaintiff, for the purpose of collection in that suit, a claim of several hundred dollars, which he held against the defendant company; and he was doubtless willing to use the utmost limit of his authority in order that the service had upon him might be made binding upon the company; and yet the sheriff at the time made return that he had executed the writs upon "Purmort, the foreman of the defendant company," which return is corroborative of Purmort's testimony, to the effect that he was only foreman of the mine, and that he so informed the sheriff at the time the service was made upon him. This service upon Purmort was not service upon the company.

Neither did the appearance of Gwynn bind the company. It is not seriously contended that Gwynn was authorized to appear for the defendant company. On the contrary, it clearly appears from the evidence that he was not so authorized, and such unauthorized appearance did not give the court jurisdiction of the defendant. And, whatever rule may obtain in other localities upon the question of acquiring jurisdiction solely by the levy of the writ of attachment, we are of the opinion that, under our statute, there must be further notice and opportunity given for a hearing before condemnation. Civil Code 1883, secs. 44, 45, 49, 99, 101; *Raynolds v. Ray, post*, p. 108, and authorities cited in former opinion.

These were the only questions passed upon in the former opinion, but upon this rehearing other and different questions have also been presented which have received our careful consideration. The claim is now made that the appellant was guilty of such laches as precludes a recovery in this action. Was the appellant guilty of laches, and, if so, to what extent, and how is it affected thereby in this suit? An examination of the testimony shows that, at the time of the commencement of the attachment suits, Kellogg telegraphed from Denver to Purmort at the mines the amount due each of the creditors, who afterwards joined in the suit, as such amounts appeared upon the company's books. The reason for sending this telegram is not given, but it is assumed by counsel for the appellees that it was for the purpose of furnishing the necessary information to enable certain creditors about the mine to institute suits against the company and secure such advantage over Moynahan as might arise from their being able to anticipate the suit which he was then threatening to commence and did in fact institute against the company the next day. In other words, it is claimed that Kellogg knew in advance that the Perkins suit was to be commenced, and it is conceded that, as he was a general agent, his knowledge,

such as it was, was knowledge of the company; and it also appears that Purmort afterwards met Mr. Pomeroy, the president of the company, and Mr. Whittaker, its secretary, in Denver, and had some conversation with them in reference to both suits, and in that conversation Mr. Pomeroy said in the presence of Mr. Whittaker that "he would be able yet to raise the money before that property would be sold to pay off the attachments." This is the substance of the testimony in reference to information obtained by the company in relation to these suits. It does not affirmatively appear that any of the officers of the company knew of the judgments or of the sale of the real estate thereunder, and, as a large amount of personal property was seized by the sheriff in the attachment suits, it is quite probable that these officers may have supposed that personal property alone had been seized. The officers of the company during all this time had the management and control of other mining enterprises, and it seems to have been a time of great depression in the business of mining, so that all these enterprises were languishing for want of capital to prosecute the same. Mr. Pomeroy was in the east, vainly endeavoring to raise money to tide over this period of depression, while Kellogg did not return to the mines, but devoted himself to other enterprises. Notice of the judgments, or of the sales made thereunder of the mines, is not brought home to the company, but, on the contrary, all the officers of the company having anything to do with the management of its business in Colorado, and who were consequently at all likely to have obtained this information, swear positively that they knew nothing of such judgments or sales.

In considering the conduct of the appellant, it must also be borne in mind that complaint is not made of any affirmative act upon the part of the officers of the company by which the appellees were misled. By their silence alone, it is claimed, the company is barred from

prosecuting this suit. It does not appear from the evidence that the appellees or their grantors were misled by this silence into the expenditure of money to their detriment in improving this property, but, on the contrary, it is shown that it was a valuable and productive property, yielding a large net revenue to those in possession since the sheriff's sales were made. Certainly there is a wide distinction to be drawn between the case of an innocent purchaser, who has erected valuable improvements upon the property, and a case in which it is shown that valuable ores have been extracted from the estate, and sold at a profit, as in this case. 2 Pom. Eq. Jur. § 812. In fact, several of the elements essential to constitute an estoppel *in pais* are lacking in this case. Id. § 805. In the case of *Gibbons v. Hoag*, 95 Ill. 67, in speaking of the question of laches, the court said: "The claim that appellee has been guilty of laches which should bar her right is destitute of merit. Mere delay alone, short of the period fixed as a bar by the statute of limitations, will not preclude the assertion of an equitable right. It is only when by delay, and neglect to assert a right, the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done, in reference to the property, had the right been promptly asserted, that the defense of laches can be considered. There is no pretense of any prejudice resulting to appellants by reason of the non-action of appellee, in any respect."

The appellant was not informed of the false return or of the unauthorized appearance of Gwynn in time to proceed by motion to correct the same in the court where the attachment suits were pending, and had no notice of the sale of its real property until the time for redemption had expired, but, as soon as it did obtain information of the fraud perpetrated upon it, it was diligent in employing counsel and commencing this suit; and as this suit was brought within less than three years from the

time of the perpetration of the fraud complained of, and within less than eighteen months from the time of the execution of the sheriff's deeds, and promptly upon the discovery of the fraud that had been practiced upon it, we think the appellant was chargeable with no such laches as should bar it from maintaining this action. Gen. St. §§ 2172–2174; *Kayser v. Maughan*, 8 Colo. 247; *Hagerty v. Mann*, 56 Md. 522; *Munson v. Hallowell*, 26 Tex. 475; *Gibbons v. Hoag, supra.*

It is claimed, however, that, aside from this question of laches, the appellant's case is fatally defective, because it appears that the judgments in the attachment suits were founded upon an indebtedness both just and due at the time the judgments were rendered, and if set aside, and a retrial of the case had, the result must be the same. Where the fraud of the party, as in this case, enters into the procurement of the judgment, it is doubtful if a court should require a showing of merits as a condition of relief. Then, again, while courts will not do an idle thing, and therefore will not ordinarily set aside a judgment when it appears, by re-opening the case, the same judgment must be again rendered upon a trial of the cause upon its merits, yet courts frequently enjoin the collection of so much of judgments fraudulently obtained as is shown to be inequitable or excessive. And so, where sales or deeds have been made under such fraudulent judgments, courts have drawn a distinction between such sales and deeds and the fraudulent judgments themselves. *Litchfield's Appeal*, 28 Conn. 127; *Martin v. Parsons*, 49 Cal. 94. Before a man's property is sold and deeded away, he should have an opportunity to pay the debt or redeem the property from sale. This right to redeem is a valuable right, secured by positive statutory enactment; which right, in this case, was denied appellant, and its property sequestered without notice to it. Under these circumstances, we believe that courts of equity should grant appropriate relief, without

inquiry as to the merits of the original claim. As said in the former opinion, these judgments as to appellant "are absolute nullities," and consequently cannot be made the basis of a valid sale.

And if it be true that the third parties have purchased under the belief that the judgments were valid and binding between the parties, this will not defeat a recovery. "Nor does the fact that the real estate sold under the judgment has passed to third parties operate to defeat the right of plaintiff to show the want of jurisdiction or of authority to accept service." *Newcomb v. Dewey*, 27 Iowa, 381. This doctrine is supported in the following cases: *Harshey v. Blackmarr*, 20 Iowa, 161; *Bryant v. Williams*, 21 Iowa, 329; *Shelton v. Tiffin*, 6 How. 163; *Ingle v. McCurry*, 1 Heisk. 26; *Mastin v. Gray*, 19 Kan. 458; *Ferguson v. Crawford*, 70 N. Y. 253.

In the case of *Harshey v. Blackmarr, supra,* Judge Dillon, speaking for the court, uses this language in reference to a judgment obtained without service and upon an appearance entered by an unauthorized attorney: "And this brings to us the more difficult question, whether, assuming these facts, and the further fact that the demurrants in the case at bar are innocent purchasers of the land, is the plaintiff entitled to relief against them. * * * The most of the cases heretofore cited arose between the immediate parties to the judgment or decree, and their facts, therefore, would not be wholly applicable to the present aspect of this case, though their principles have more or less bearing upon it. In arriving at the conclusion that the decree on the facts assumed would be wholly null and void as to the present plaintiff, we have been much fortified by the finding that such would be the judgment of the civil law under such circumstances."

In the case at bar the record entry does not show that service was made upon the defendant in either suit, and, if we go to the officer's return, we find that by the first

return Purmort is described as "foreman of the defendant company," which return was afterwards amended upon motion of plaintiff, so as to show that he was the general agent of the company, while in the return upon some of the other papers he is described as the resident agent. There was evidently much uncertainty in the mind of the officer as to the true capacity in which Purmort was acting at the time. It is said, however, that the officer's return, as amended, cannot be impeached. There is both reason and authority for holding that there is a wide distinction to be drawn between the recital in the officer's return of matters presumptively within his personal knowledge and the recital of matters, as in this case, not presumptively within such knowledge. The time upon which service was made, the county where made, the manner of service, were all matters presumptively within the personal knowledge of the officer. But the recitals in the various returns that Purmort was "the foreman of the defendant company," "the agent of the defendant company," "the resident agent of the company," etc., were recitals of matters not presumptively within his knowledge, but of matters about which an officer must determine the fact upon the best information at hand at the time, which information came in this case largely from interested parties. And we are aware of no decision holding that his return as to such finding of fact cannot be contradicted when properly attacked. In the case of *Bond v. Wilson*, 8 Kan. 231, the court, in speaking of such return, says: "We know of no statute that makes a sheriff a final and exclusive judge of where a man's residence is, or what is the age of a minor, or who are the officers of a corporation, or where their place of business is; and, when the statute made it the duty of the sheriff to ascertain these facts, it did not make his return of such facts conclusive. Of his own acts his knowledge ought to be absolute, and himself officially responsible. Of such facts as are not in his

special knowledge, he must act from information, which will often come from interested parties, and his return thereof ought not to be held conclusive." And to the same effect are the following cases: *Chambers v. Manufactory*, 16 Kan. 270; *Hanson v. Wolcott*, 19 Kan. 207; *Mastin v. Gray*, id. 468; *Walker v. Lutz*, 14 Neb. 274.

The question of a defect of parties defendant is raised for the first time in this court; the claim advanced being that the plaintiffs in the attachment suits are indispensable parties to this action, without whom no decree can be entered in favor of the appellant. It appears from the pleadings and evidence that at the sales made under the judgments Moynahan and Gwynn purchased the property for the judgment creditors for an amount sufficient to satisfy the judgments, and afterwards sold it to the appellees for an amount largely in excess of the amount of such judgments, the appellees taking quitclaim deeds to the property, and they have, in turn, reaped a benefit out of working the property in an amount largely more than the purchase price paid by them. Neither Perkins nor Moynahan claims any interest in the property, and are not liable under the quitclaim deeds. 3 Washb. Real Prop. p. 356, § 4; *Adams v. Schiffer*, 11 Colo. 15. The case of *Allen v. Tritch*, 5 Colo. 229, cited by counsel, is not analogous to the case at bar; for the reason that, although Allen had deeded away his interest in the land, the title to which was the subject of controversy, he had, to secure the purchase price, taken a mortgage upon the premises, and also a power of attorney to sell, convey or lease the same, and consequently was held to be a necessary party. In the case of *Snyder v. Voorhes*, 7 Colo. 296, it was held, upon demurrer to the bill, that "in an action to cancel and set aside a deed of record on the ground that it was never delivered, and its possession procured by the grantee by fraud, the grantee being dead, his heirs are necessary

parties." But here the legal title was in the heirs, and consequently they were indispensable parties. In the case at bar, as neither Perkins nor Moynahan had any interest in the property at the time of the bringing of this action, they are not indispensable parties, and a decree can be entered between the parties to this action without them. Civil Code 1883, § 16; *Pollard v. Lathrop, post,* p. 171. If appellees desired their presence for any purpose, they should have taken the proper steps in the court below to have had them made parties, and not have consented, by their silence, to the case proceeding without them. Under our Code of Civil Procedure, "a defect or misjoinder of parties plaintiff or defendant" is made a ground of demurrer if such defect or misjoinder appears upon the face of the complaint, and, when not appearing upon the face of the complaint, it is provided that the objection may be taken by answer. And the code also provides: "If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court and the objection that the complaint does not state facts sufficient to constitute a cause of action, which objections may be raised at any time." Code 1883, §§ 55, 59, 60. Appellees, having failed to make the objection of a defect of parties in the court below, either by demurrer or answer, must be deemed to have waived the same. *Hicks v. Jackson,* 85 Mo. 283; *Grain v. Aldrich,* 38 Cal. 514. If, however, in the course of the subsequent proceedings in this case, the court should find it impossible to completely determine the controversy between the parties without the presence of Perkins and Moynahan, the court has the power to order them to be brought in. Civil Code 1883, § 16.

In view of the circumstances of this case, we do not deem it advisable to enter a final decree in this court,

but the case will be reversed and remanded, leaving counsel and the court below to pursue such course in relation to additional parties and further proceedings as they shall be advised.

Reversed and remanded.

*Reversed.*